[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 30, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-11187

_____

D. C. Docket No. 97-00935-CV-ASG

GARY A. LEVINSON,

Plaintiff-Appellee,

versus

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____
**(March 30, 2001)**

Before WILSON, KRAVITCH and COX, Circuit Judges.

WILSON, Circuit Judge:

On this appeal, we review a summary judgment entered on behalf of Gary A.

Levinson ("Levinson") on his claim against Reliance Standard Life Insurance

Company ("Reliance") for long-term disability benefits. Reliance appeals from summary judgment on the issue of liability, the district court's decision refusing to remand the claim decision back to Reliance's plan administrator for further review, and its award of damages to Levinson. To resolve this appeal, we consider three issues: (1) whether the district court erred in determining that Reliance's disposition of Levinson's claim was arbitrary and capricious; (2) whether the district court erred in failing to remand the case to Reliance after concluding that its claim decision was arbitrary and capricious; and (3) whether the district court erred in awarding disability benefits to Levinson.

## I. BACKGROUND

Levinson, an attorney, filed a claim for benefits with Reliance under his law firm's group long-term disability policy ("the policy" or "the plan") governed by the Employee Retirement Income Security Act ("ERISA").[1] Levinson claimed that he was entitled to disability benefits due to a "serious problem with the heart, specifically severe prolapse of the mitral valve associated with mitral insufficiency" which precluded him from working on a full time basis. A cardiologist advised Levinson to work only on a part-time basis because job stress

---

[1] The Employee Retirement Income Security Act of 1974 and as amended, 29 U.S.C. §§ 1001 *et seq.*

2

caused by working as a full-time real estate attorney could put him at risk for enhancing the progression of his heart condition.

Under the Reliance policy, an insured is entitled to monthly benefits if he "(1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability to [Reliance]."[2] The policy also says that those who are partially disabled[3] "will be considered Totally Disabled, except during the Elimination Period . . . ." In support of his claim, Levinson submitted an Attending Physician's Statement ("APS") from Dr. Azar (his cardiologist) that said Levinson was totally disabled since June 27, 1995,[4] and described Levinson's physical limitations as prohibiting him from engaging "in heavy physical work and stressful situations."

Reliance separately obtained Levinson's medical records and denied Levinson benefits, citing a lack of physical symptoms and "objective medical findings." Reliance stated that Levinson's condition did not preclude him from

[2]The Elimination Period is defined in the policy as 90 consecutive days of total disability for which no benefit is payable.

[3]The policy defines partially disabled as: "capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis."

[4]Levinson filed his claim on August 24, 1995, and the law firm through which he was covered terminated his employment on August 15.

performing the material duties of his occupation, so he did not meet the definition of "Totally Disabled." In making its decision, Reliance relied on the report of a nurse in its medical records department and the opinion of a claims person. Levinson requested formal review of the decision, and submitted a supporting letter from Dr. Azar. After Reliance denied his appeal, Levinson filed this lawsuit in state court pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to him under a group policy governed by ERISA. Reliance removed to the district court.

Levinson moved for summary judgment, asking the district court to review *de novo* Reliance's decision. Reliance opposed the motion, and argued that the appropriate standard of review was whether its claim decision was arbitrary and capricious. Levinson conceded in his reply brief that the proper standard was arbitrary and capricious, and that he was entitled to summary judgment under that standard as well. The magistrate judge recommended granting the motion, noting the lack of evidence to support the plan administrator's decision to deny benefits. The district court adopted the magistrate's report and recommendation, finding Reliance liable to Levinson for benefits,[5] and held a bench trial to determine the amount of damages. Reliance argued that the district court should either remand

_____

[5]Reliance sought to appeal this decision under the ministerial exception to the finality doctrine, as all that remained for the district court to do was the ministerial act of remanding the case to Reliance to calculate damages. We dismissed the appeal for lack of jurisdiction (No. 98-5539).

Levinson's claim to Reliance for an initial calculation of damages, or should limit the evidence of damages to evidence contained in the administrative record. The district court did neither, and determined Reliance had not shown that Levinson's condition had improved, and awarded benefits through the date of trial. The parties had agreed on the monthly benefit amount Levinson was to receive (60% of his covered monthly earnings on the date prior to disability or $3,500 per month). The parties did not agree on the time period over which the past-due benefits were payable (the court decided the period extended to the date of trial), or on the amount of "other income benefits" to be offset from the agreed upon monthly benefit amount. The policy dictated that wages and other compensation benefits were to be offset from the monthly benefits. The court found that Levinson was entitled to damages in the amount of $138,825.62, and the parties agreed to ten percent pre-judgment interest. This appeal followed.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*, applying the same legal standards that controlled the district court's decision. *See Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997). Whether the district court erred in failing to remand the case to Reliance's plan administrator is a question of law subject to *de novo* review. *See id.* ("We cannot say that the

district court erred in remanding for the Plan administrator to make a reasonably relevant inquiry."). We review the district court's findings of fact for clear error. *See* Fed. R. Civ. P. 52(a); *Worthington v. United States*, 21 F.3d 399, 400 (11th Cir. 1994).

*A.      Whether the Claim Decisions Were Arbitrary and Capricious*

The district court concluded, after an independent review of the record and a *de novo* determination of the issues, that the plan administrator's decision was arbitrary and capricious and that Reliance had no basis upon which it could deny Levinson's claim. The district court found that the plan administrator's decision did not survive even the most deferential standard of review.

Because the policy gives the administrator discretion to determine eligibility for benefits, we must determine whether the administrator's decision was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1138-39 (11th Cir. 1989). Normally, "[a] decision to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision." *Shannon*, 113 F.3d at 210. Because Reliance pays out to beneficiaries from its own assets, however, a conflict of interest exists between its fiduciary role and its profit making role. Thus, the proper standard in this case is a heightened arbitrary and capricious

6

standard. That is, the arbitrary and capricious standard "must be contextually tailored" to the case. *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1563-64 (11th Cir. 1990) (citation and internal quotation marks omitted). When conflicts like the one in this case exist, a highly deferential review is inappropriate. *See id.* at 1562. "[A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Id.* at 1566-67. "It is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary." *Id.* at 1566 n.12. Whether a claim decision is arbitrary and capricious requires a determination "whether there was a reasonable basis for [Reliance's] decision, based upon the facts as known to the administrator at the time the decision was made." *Jett*, 890 F.2d at 1139.

To support his initial claim, Levinson submitted an APS from Dr. Azar stating that he was totally disabled. Levinson was under the care of a physician, and there is no dispute that he completed the elimination period. Reliance also had access to Levinson's medical records that detailed his heart condition. At the time

7

Reliance made the decision on Levinson's claim, it appears that the only facts known to it were based on Dr. Azar's APS, Levinson's medical records, and Levinson's status as a full time employee at the law firm. Reliance's decision on Levinson's appeal involved a review of the same facts as its first decision, as well as: (1) Dr. Azar's letter of January 1996 which stated Levinson could not perform the material duties of his occupation on a full-time basis; and, (2) office attendance records showing that between Levinson's initial appointment with Dr. Azar and the date of his termination Levinson had taken two sick days, left early for a doctor's appointment one day, and had taken 11 ½ vacation days.[6] It appears, therefore, that Reliance relied on the nurse's review and the opinion of its claim person that Levinson was asymptomatic and not disabled, and not upon any independent medical evidence to conclude that Levinson did not meet the definition of

---

[6]Reliance asserts that Levinson's attendance and billing records and status as a full-time employee constitute record evidence that it should not consider Levinson to be disabled. In *Marecek v. Bellsouth Telecomms., Inc.*, 49 F.3d 702 (11th Cir. 1995), we stated that "BellSouth focused on Marecek's attendance . . . as evidence that she could work. However, Marecek 'gave it a go' and her attempt to work does not forever bar her collection of sickness disability benefits." *Id.* at 706. Marecek's attendance as evidence of her ability to work was raised at oral argument in that case, and the opinion did not say whether attendance evidence was contained in the administrative record, as the evidence of Levinson's full-time status was contained in the administrative record here. We doubt that Levinson's status as a full-time employee constitutes evidence that he was able to perform the material duties of his occupation on a full-time basis. Furthermore, the evidence of Levinson's use of sick days and vacation days in a short period tends to show that Levinson was not capable of performing the material duties of his occupation on a full-time basis.

disabled.[7] Furthermore, Reliance's assertion that Levinson was asymptomatic does not appear to be a reason for denying benefits anywhere in the language of the policy.

We find that Reliance's decisions on Levinson's claims were wrong from a perspective of *de novo* review, and its self-interest in this case requires that we determine whether the claims decisions were arbitrary and capricious. It does not appear that there was a reasonable basis for Reliance's decisions, based on the evidence known to Reliance at the time it made the decisions. Aside from the report from his law firm indicating that Levinson was a full-time employee, there did not appear to be any evidence before Reliance that contradicted Levinson's evidence from his physician that he was totally disabled under the terms of the plan. Therefore, the district court was correct in holding the claim decision was arbitrary and capricious.

B.    *The District Court's Refusal to Remand to Reliance*

1.    Liability

Reliance argues that remand is required where it cannot be said that it would have been unreasonable for Reliance to deny Levinson's claim on any ground.

---

[7]Reliance did not obtain an independent medical opinion until Levinson moved for summary judgment, when it had a University of Miami professor of cardiology (Dr. Myerburg) review Levinson's records.

Reliance also argues that remand is required where the administrative record could support liability only through the date of the most recent medical evidence and contained insufficient evidence upon which to determine the amount of benefits through that date.

The district court held that remand was not necessary in this case because the administrator had considered all of the record evidence and had reached a conclusion under the heightened arbitrary and capricious standard that was unsupported by the evidence in the record. The district court reasoned that in cases like this one, where the administrator considered all of the record evidence and reached a conclusion, remand is not appropriate.

Reliance cited *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995), for the proposition that after a finding that an ERISA claim decision was arbitrary and capricious, the case must be remanded for reconsideration and to consider additional evidence unless the district court finds it would be unreasonable to deny the claims on any grounds. The Second Circuit held that it was error for a district court to hold a *de novo* bench trial to determine whether care was medically necessary. *See id*. at 1071-72 . In this case, there was no *de novo* bench trial with extrinsic evidence to determine that Levinson was disabled; the district court considered only what was in the administrative record. The Second Circuit also

found that the administrator may have been able to deny the claim on a more complete record. *See id.* at 1072. In this case, the record was complete, and Reliance had ample opportunity to obtain evidence for the record to rebut Levinson's evidence. It did not. The district court found that the evidence in the administrative record pointed only in favor of finding that Levinson was disabled, a finding the district court in *Miller* did not make. *See id.* at 1071.

Reliance also argues that the independent medical opinion obtained for its summary judgment motion is evidence it could consider on remand. In support of this proposition, Reliance cites a Seventh Circuit opinion that held "[a]s a general matter a court should not resolve the eligibility question on the basis of evidence never presented to a pension fund's trustees but should remand to the trustees for a new determination." *Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 824 (7th Cir.1980) (quoted in *Jett*, 890 F.2d at 1140). Other circuits suggest that once the administrator completes its review, the record becomes closed. *See Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1464 (9th Cir. 1997) (suggesting burden is on plan to build up adequate and relevant information to make a decision on the claim); *Sandoval v. Aetna Life and Casualty Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) (denying beneficiary's request for

11

remand to consider evidence never presented to administrator before administrator completed review).

In *Shannon*, after affirming the district court's decision that a claim decision was arbitrary and capricious, we also affirmed the district court's decision to remand to the plan administrator. *See Shannon*, 113 F.3d at 210. But, the facts in *Shannon* are distinguishable from the facts in the instant case. In *Shannon*, the plan administrator relied only upon a conclusory recommendation of denial from its medical consultant and the denials of other insurance companies in deciding that a pancreas transplant was investigational. The district court ruled that the decision was arbitrary and capricious and ordered a remand so the plan administrator could consider additional evidence that the beneficiary wanted to present. *See id.* In Levinson's case, Reliance–not the beneficiary–wanted a remand to consider evidence that would tend to show Levinson was not disabled.

We find persuasive the Eighth Circuit's reasoning in *Davidson v. Prudential Ins. Co. of America*, 953 F.2d 1093 (8th Cir. 1992). In that case, Davidson contended that the district court erred in refusing to remand the case to the plan administrator to consider a vocational report and a psychiatrist's report prepared after litigation had commenced. *See id.* at 1095. The district court refused to remand, because "if Davidson believed the evidence he now offers was necessary

12

for Prudential to make a proper benefits determination, Davidson should have obtained this evidence and submitted it to Prudential." *Id.* We find that this reasoning should apply with equal force to the insurance company as to the beneficiary. Reliance had more than adequate opportunities to establish an administrative record containing evidence contradicting Levinson's evidence pointing to disability on two occasions: when it first considered Levinson's claim and upon Levinson's administrative appeal. Reliance did not do this. It was not until after litigation commenced that Reliance obtained evidence contradicting Levinson's evidence that he was disabled under the policy. Therefore, the district court's refusal to remand the issue of Levinson's eligibility for benefits to Reliance should be upheld.

2.     Benefits

Reliance argues that even if the district court correctly determined that remand was not necessary to determine Levinson's initial eligibility for benefits under the plan, remand was required to determine the amount of benefits Levinson should receive. Reliance contends that the administrative record does not contain any information as to whether Levinson worked part-time or full-time since October, 1995, which would be relevant to determining the amount to offset from Levinson's benefits. Reliance also contends that the administrative record's last

13

medical evidence is from January, 1996, so Reliance's liability should run to that date only.[8]  According to Reliance, remand would have allowed it to gather and consider evidence regarding the appropriate offset for benefits payable through January 2, 1996 and regarding Levinson's subsequent eligibility for benefits under the policy.[9]

Reliance argues that this Court should require the district court to vacate its award of damages to Levinson and remand to Reliance to decide the amount of benefits to which Levinson is entitled.  Then, if Levinson is not satisfied with that amount, he can bring another action under § 1132(a)(1)(B), and the district court can review Reliance's determination under the arbitrary and capricious standard to assess its reasonableness.

The text of § 1132(a)(1)(B), under which Levinson brought this action, allows a beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  Under the text of the

---

[8]The policy states that the monthly benefit will stop on "the earliest of: (1) the date the Insured ceases to be Totally Disabled . . . ." or "(4) the date the Insured fails to furnish the required proof of Total Disability."

[9]At the trial to determine the amount of benefits Levinson was to receive, the parties agreed that the amount of Levinson's monthly benefit would be calculated according to the formula in the policy (60% of covered monthly earnings on the date prior to disability or $3,500 per month), and the prejudgment interest amount to be added to Levinson's benefits.  The only issues the district court tried were the time period over which benefits were payable, and the amount of "Other Income Benefits" to offset from the monthly benefit amount.

14

statute, it does not appear that the court was required to remand to Reliance to determine the amount of benefits to which he was entitled. We stated in *Jett* that "'[a]s a general matter a court should not resolve the eligibility question on the basis of evidence never presented to [an ERISA plan's administrator] but should remand to the [administrator] for a new determination.'" *Jett*, 890 F.2d at 1140 (quoting *Wardle*, 627 F.2d at 824) (alteration in original). That statement, however, was made in the context of the beneficiary asking the court to consider additional evidence concerning his eligibility under the plan. In this case, the district court already determined at summary judgment that Levinson was eligible for benefits under the plan and that Reliance wrongfully denied Levinson's benefits.

The district court noted that Levinson continued to provide proof of his continuing total disability throughout the litigation, and because of that, Reliance could not argue that Levinson failed to perform his duties under the part of the insurance contract requiring the insured to furnish proof of disability. The court also found that there was sufficient evidence to find that Levinson was still "Totally Disabled" under the policy, and that Reliance had not shown Levinson's condition had improved. In making the latter determination, the court discounted the opinion of Dr. Myerburg who reviewed Levinson's documents. The court

15

stated that the problem with Myerburg's testimony was that he argued Levinson was never disabled, not that his condition improved to the point where he was no longer disabled (Myerburg agreed with Levinson's doctors that Levinson's condition was not likely to improve; the disagreement was that Myerburg did not believe that emotional stress from work would worsen Levinson's condition as Levinson's doctors did).

The district court also gave less weight to Myerburg's testimony, as he was a reviewing physician, and not a treating physician or examining physician. The court cited *Donaho v. FMC Corp.*, 74 F.3d 894, 901 (8th Cir. 1996), to support this conclusion. The court concluded that any administrative decision that Levinson was no longer disabled would "lack[] support in the record" and would be "so overwhelmed by contrary evidence, the administrative decision [would be] unreasonable and [would] not stand." *Id.* In *Donaho*, however, the Eighth Circuit instructed the district court to remand the case to the administrator, requiring the "administrator to acknowledge liability at least until October 1, 1993, and for such additional time as the record may show that Donaho's condition remained the same or worsened after October 1993. The administrator of the plan should permit additional evidence to determine the duration of the disability, if any, following October 1, 1993." *Id.* at 901-02.

16

Under the language of the plan, once Levinson became eligible for monthly benefits, those benefits would not terminate until "the date [he] ceases to be permanently disabled," or "the date [he] fails to furnish the required proof of Total Disability." During discovery in this case, Levinson continued to provide proof that he was "Totally Disabled" under the terms of the plan. Under the Eighth Circuit's holding in *Donaho*, reversing the district court with instructions to remand to the plan administrator would appear to be the proper action for us to take. We find, however, that remand to Reliance to determine whether Levinson was still disabled would have hindered the goal of judicial economy. In this case, where all of the evidence before the district court showed that Levinson's condition had not improved and tended to show that he was still disabled under the terms of the plan, remand was neither a necessary nor an appropriate remedy. *See, e.g.*, *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 n.6 (4th Cir. 1993) (en banc) ("[R]emand to the plan administrator is . . . available to the district court, where necessary. We do not believe, however, that remand in every case of an inadequate record is . . . in the interests of judicial economy.").

The dissent argues that Reliance never had the opportunity to determine "whether Levinson was still totally disabled at the time of trial in late 1999" and that the district court should have remanded the claim to Reliance so that it could

17

determine whether Levinson remained disabled under the terms of the plan. We agree that, as a general rule, remand to the plan fiduciary is the appropriate remedy when the plan administrator has not had an opportunity to consider evidence on an issue. *See Jett*, 890 F.2d at 1140. We do not agree, however, that a remand to the plan administrator is appropriate in every case, *see Quesinberry*, 987 F.2d at 1025 n.6, nor do we agree that our own precedent dictates that remand is appropriate in every case. The dissent asserts that on remand, the plan fiduciary could consider evidence of Levinson's work history since March 3, 1996. The dissent suggests this evidence would show that Levinson practiced law full-time.[10] Our review of the record does not disclose any additional evidence that would indicate Levinson has ceased to be disabled under the terms of the plan. We find that this case is an unusual one, in which the general rule of remand is neither appropriate nor necessary.

C.     *The District Court's Award of Damages to Levinson*

Reliance argues that the district court erred in two other ways: by requiring Reliance to prove Levinson ceased to be disabled when it never determined

---

[10]Levinson's billing records indicate that he billed "in excess of twelve hours in a day on two occasions, ten or more hours on two occasions, in excess of nine hours on one occasion, and eight or more hours on four occasions during the period between February 1996 and November 1997." These nine days in a period of nearly two years do not indicate that Levinson was capable of performing all of the material duties of his occupation on a full-time basis.

18

Levinson was disabled in the first place; and by finding Reliance had not met the burden of proving Levinson ceased to be disabled when Levinson's testimony regarding the number of hours he worked was inherently incredible and internally inconsistent.

Reliance asserts that it could not meet the burden of proving that Levinson was no longer disabled because it had always taken the position that he was never disabled. Reliance contends that when the court found that Levinson was disabled, it wrongly switched the burden to Reliance to prove Levinson was no longer disabled in order to end benefits. Reliance points out that in *Miller*, the Second Circuit found a decision by an ERISA fiduciary to be arbitrary and capricious, but noted that the burden of proof on remand remained with the insured. *See Miller*, 72 F.3d at 1073-74. Levinson submitted documents in this litigation that showed he still had a heart condition that two physicians agreed precluded him from performing the material duties of his occupation on a full-time basis. Thus, he submitted proof that he was still "Totally Disabled" under Reliance's plan. Because Levinson satisfied his obligations under the terms of the plan, Reliance had to produce evidence showing that Levinson was no longer disabled in order to terminate his benefits.

Reliance introduced billing records from September 1995 to January 1998 that purportedly demonstrated Levinson worked in excess of the four to five hours a day he said he was capable of working. At trial, Levinson testified that he did not actually work all of the hours that he billed, but that he "value billed" his clients, so a job that may have taken him one hour was billed for eight hours. Reliance argues that the testimony is not credible, because Levinson either lied or violated the Florida Bar's ethical rules on billing clients.[11] Reliance argues no reasonable fact finder could credit Levinson's testimony, so it was clear error for the district court to find Levinson remained disabled in light of the billing records supporting his ability to work full time; therefore, this Court should remand to the district court to make findings addressing the conflict in Levinson's testimony.

Levinson also testified that "for the most part" he worked less than five hours a day. Levinson further testified that on some days, he would not go into the office at all, or would only go into the office for short periods of time, or would not spend the entire time he was at the office working. Levinson also stated that on some days, he did work more than five hours. Based on this evidence, the district court made a factual determination that Levinson did not work full time and therefore, did not cease to be disabled. We review this factual finding for clear

[11]We certainly do not condone such a practice, but its propriety is not before us today.

20

error.  *See* Fed. R. Civ. P. 52(a).  Our review of the record does not leave us "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).  We find, therefore, the district court did not clearly err in deciding that Levinson did not cease to be disabled.

### III.  CONCLUSION

The district court correctly found Reliance's claim decisions were arbitrary and capricious, and correctly refused to remand to Reliance for decisions on Levinson's eligibility or the amount of benefits to which he was entitled.  For the foregoing reasons, we affirm the decision of the district court.

**AFFIRMED.**

COX, Circuit Judge, concurring in part and dissenting in part:

I do not join the court's opinion, but concur in the holding that Reliance's denial of Levinson's 1995 claim was arbitrary and capricious given the limited administrative record before Reliance at the time it rejected the claim. The district court erred, however, by proceeding to conduct an inquiry into whether Levinson had remained disabled until the time of trial.

The role of the courts when plan participants file suit alleging the improper denial of benefits is to review the decisions made by plan administrators. *See, e.g. Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1989). In this case, the district court properly reviewed the two decisions made by Reliance, the initial denial in 1995 and the decision on Levinson's appeal in 1996. But, the court then proceeded to try an issue never previously presented to Reliance: whether Levinson was still totally disabled at the time of trial in late 1999. This, in my opinion, was impermissible.

ERISA provides district courts with jurisdiction over actions for recovery of benefits allegedly improperly denied a plan participant. *See* 29 U.S.C. § 1132(a)(1)(B). It does not, however, empower courts to hear claims for benefits which were not first presented to and decided by the plan fiduciary. Here, Reliance made its last decision on Levinson's eligibility for benefits on March 3, 1996.

22

Accordingly, the proper course in this case would have been to remand the claim to Reliance with instructions to find that Levinson was totally disabled as of March 3, 1996.

The district court, under the guise of trying the question of damages, proceeded to try the question of whether Levinson remained disabled through the time of trial — over three years after his initial claim was denied by Reliance on appeal.[1] That the district court conducted a trial on Levinson's continuing disability is clear from the majority opinion — it reviews the court's factual finding that Levinson remained disabled for "clear error." This is justified, the majority concludes, in the interest of judicial efficiency, because all of the evidence before the district court demonstrated that Levinson's condition had not improved and tended to show that he was still disabled. I disagree with this conclusion. Evidence that Levinson's condition had not improved is not conclusive on the question of whether he continued to be disabled under the plan. As the majority notes, the relevant definition of disability is whether the participant is "capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis." Therefore, in conducting an

---

[1] The court had previously precluded Reliance from obtaining an independent medical examination of Levinson and from taking depositions on the ground that "the issue in this case is not the disability of [Levinson], but rather the decision of [Reliance]." (R.1-37, R.1-38.).

23

inquiry into whether Levinson was still disabled, Reliance could consider evidence of Levinson's work history since March 3, 1996, the date on which his initial claim was denied on appeal.

The record in this case contains substantial evidence that Levinson, a real estate lawyer, has continued to practice law full-time since making his initial claim. Levinson testified that he has continued to work steadily since 1995.  (R.8 at 59). Although Levinson contended that he has worked at most five hours a day, he conceded on cross examination that his billing records for the period from September 1995 through January 1998 reflected that he worked six and seven hour days on numerous occasions and had also recorded days that he billed his clients for eight, ten and twelve hours of work.  (R.8 at 73).  For example, Levinson's records showed that he worked six hours on September 19, 1995, seven hours on September 21, 1995 and ten hours on September 22, 1995.  (R.8 at 69, 72, 73). Each of these days fell within one month of the day Levinson filed his disability claim.  Levinson also admitted to billing in excess of twelve hours in a single day on two occasions, ten or more hours on two occasions, in excess of nine hours on

one occasion, and eight or more hours on four occasions during the period between February 1996 and November 1997.[2] (R.8 at 69-71).

Although the district court apparently found that Levinson's billing records significantly exaggerated the amount of time he worked, I suggest that Reliance — not the district court — was entitled to evaluate this evidence and make its own determination about whether Levinson was working full-time.[3] I conclude, therefore, that the district court tried an issue never addressed by the plan fiduciary. This was inappropriate under our precedent.

---

[2] The billing records evidence may not conclusively demonstrate that Levinson was working full-time in the period after his filed his claim. However, its existence does belie the assertion that all the evidence before the district court suggested that Levinson was still disabled under the terms of the plan. Because the record did contain evidence which tended to show that Levinson was no longer disabled, I believe that the goal of judicial economy does not support the district court's refusal to remand.

[3] The district court made no specific findings as to whether Levinson's billing records accurately reflected the time he spent working, instead noting that Levinson had worked "part-time" since filing his disability claim.