PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-14105

_____

D. C. Docket No. 99-02369-CV-MHS-1

EDWARD HENNING,
in his capacity as personal representative
of Lora Henning,

Plaintiff-Appellant,

versus

CONTINENTAL CASUALTY COMPANY,
ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 27, 2001)**

Before BIRCH and HULL, Circuit Judges, and O'NEILL[*], District Judge.
BIRCH, Circuit Judge:

---

[*]Honorable Thomas N. O'Neill, Jr., U.S. District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Edward Henning, acting as the personal representative of the estate of Lora Henning,[1] appeals the district court's grant of summary judgment to Continental Casualty Company ("Continental") and St. Paul Fire and Marine Insurance Company ("St. Paul") in Lora Henning's suit to recover a judgment against her condominium association, Mount Vernon Towers Condominium Association ("Mt. Vernon"). We AFFIRM the district court's decision as to Continental, VACATE the grant of summary judgment to St. Paul, and REMAND.

## I. BACKGROUND

This case is the latest in a series of suits filed by Henning in an attempt to recover for injuries she sustained in 1995. In June 1995, Henning was injured when she was struck by a motorized cart being driven by Audra Baty, a resident of Mt. Vernon. At the time of the accident, Mt. Vernon had two insurance policies. St. Paul provided Mt. Vernon with general liability insurance. Continental was Mt. Vernon's professional liability carrier.

Henning sued Baty and Mt. Vernon in Fulton County, Georgia State Court for negligence. Henning subsequently amended her complaint to add a claim

_____

[1]Subsequent to the filing of this appeal, Lora Henning died. Any reference to Henning should be construed as a reference to her estate where appropriate.

against Mt. Vernon for negligent failure to obtain proper insurance.[2]  Baty did not respond and a default judgment was entered against her on 21 October 1996 in the amount of $160,636.86.  St. Paul refused to pay the judgment against Baty on the grounds that she was not an insured under Mt. Vernon's liability policy.  St. Paul did defend Mt. Vernon, but did not issue a reservation of rights.  Mt. Vernon won summary judgment on Henning's negligence claims.  Henning was denied summary judgment on the remaining claim of negligent failure to obtain insurance.  The Georgia Court of Appeals affirmed the state court rulings in September 1997.

Henning did not pursue the remaining claim until February 1998.  At that time she filed a new lawsuit against St. Paul in Dekalb County, Georgia Superior Court, alleging that St. Paul was liable for Mt. Vernon's failure to obtain proper insurance.  The suit was voluntarily dismissed.  Henning then filed a claim against Mt. Vernon and St. Paul in Fulton County State Court in September 1998.  She claimed that St. Paul should compensate her for the default judgment against Baty

---

[2]O.C.G.A. § 44-3-107(2) requires that condominium associations carry liability insurance.

> The policy or policies shall cover the association, the board of directors . . . and all unit owners and other persons entitled to occupy . . . for occurrences commonly insured against arising out of or in connection with the use, ownership, or maintenance of the common elements or other portion of the condominium which the association has the responsibility to maintain.

Id.

under Mt. Vernon's general liability policy. She also argued that, if St. Paul was not liable for the judgment against Baty, then Mt. Vernon was liable for failure to obtain proper insurance as required by O.C.G.A. § 44-3-107(2). See note 1, supra. St. Paul refused to defend Mt. Vernon and denied coverage for the claim against Mr. Vernon.

In May 1999, Henning and Mt. Vernon settled her claim for negligent failure to obtain proper insurance and Mt. Vernon consented to a judgment against it of $225,000. In exchange, Henning agreed that she would not seek to execute the judgment against Mt. Vernon, but rather would pursue any rights that Mt. Vernon might have against its insurers. Mt. Vernon assigned those rights to Henning. Neither insurance company participated in the settlement. The $225,000 judgment was entered against Mt. Vernon. St. Paul then removed the case to federal court on diversity grounds and won summary judgment on Henning's claim that St. Paul was liable for the default judgment against Baty.

In September 1999, Henning filed the instant suit against St. Paul and Continental. She claims that one or both carriers are liable for the $225,000 judgment against Mt. Vernon for negligent failure to obtain proper insurance. The district court found that the assignment of Mt. Vernon's rights under both policies was valid and conferred standing on Henning to sue. Nevertheless, the court

4

granted summary judgment on the claim against Continental on the grounds that the exclusionary clause of the policy applied and the claim was therefore not covered by the policy. As to St. Paul, the court found that a more specific clause in its policy, precluding suit against it where a damages claim has not been litigated by a trial or a settlement has not been agreed to by St. Paul, was consistent with public policy against covenant judgments. Accordingly, the district court granted summary judgment to St. Paul.

## II. DISCUSSION

We review a district court's grant of summary judgment <u>de</u> <u>novo</u>. <u>Levinson</u> <u>v. Reliance Standard Life Ins. Co.</u>, 245 F.3d 1321, 1325 (11th Cir. 2001).

A. <u>The Continental Policy</u>

Continental provided Mt. Vernon with a professional liability policy. That policy contained an express exclusion that provided:

> The Insurer shall not be liable to pay any loss in connection with any Claim based upon, directly or indirectly arising out of, or in any way involving any actual or alleged bodily injury, sickness, disease, or death of any person.

R1-11, Ex. A at 4-5, 12.

Henning argues that her claim is not one for personal injury, but rather for negligent failure to obtain insurance, and the policy exclusion does not apply. Under Georgia law, however, the policy exclusion does preclude recovery against

5

Continental. In <u>Continental Casualty Co. v. H.S.I. Financial Services, Inc.</u>, 466 S.E.2d 4 (Ga. 1996), the Georgia Supreme Court interpreted an exclusionary clause with similar language to exclude a secondary negligence claim. 466 S.E.2d at 6-7. In that case, the policy excluded recovery for claims arising out of dishonest or fraudulent acts by a law firm's partners. <u>Id.</u> at 5. The underlying injury was the conversion of escrow funds by one partner to his personal use, but the suit was brought against the other partners for negligence and malpractice, based on their failure to supervise the embezzler. <u>Id.</u> The Georgia Supreme Court held that the negligence claim was not covered by the policy, because, but for the underlying embezzlement, there could have been no negligence claim against the other partners in the firm. <u>Id.</u> at 6.

Subsequently, the Georgia Court of Appeals has applied this rule to exclude coverage for a negligence claim against a bar owner after someone fired a weapon in the bar, injuring several patrons. <u>Eady v. Capitol Indem. Corp.</u>, 502 S.E.2d 514, 514 (Ga.Ct.App. 1998). The owner's policy excluded claims arising out of an assault or battery. <u>Id.</u> at 515. The court found that exclusionary clauses using the term "arising out of" "focus[] solely upon the <u>genesis</u> of a plaintiff's claims. If those claims arose out of the excluded culpable conduct, coverage need not be provided." <u>Id.</u> at 516. Because Henning's claim here is based on her underlying

6

personal injury claim, the exclusionary clause applies. The grant of summary judgment by the district court for Continental is AFFIRMED.

## B. St. Paul's Policy

St. Paul's policy contained an anti-assignment clause which, according to its terms, precluded the assignment to Henning by Mt. Vernon of its rights under the policy. The district court correctly found this anti-assignment clause to be invalid for claims under the policy. Under Georgia law, an assignment of a claim does not affect the risk insured. Santiago v. Safeway Ins. Co., 396 S.E.2d 506, 507 (Ga.Ct.App. 1990). Accordingly, "the claim of the insured, like any other chose in action, [can] be assigned without in any way affecting the insurer's liability." Id. at 508.

The district court found, however, that a more specific policy provision barred recovery by Henning as Mt. Vernon's assignee.

> [T]he policy . . . also specifically provides for the situation at issue here:
>
> 'No one can sue us on a liability claim until the amount of the protected person's liability has been finally decided either by a trial or by a written agreement signed by the protected person, by us, and by the party making this claim. Once liability has been determined by judgment or written agreement, the party making the claim may be able to recover under this policy, up to the limits of coverage that apply. But that party can't sue us directly or join us in a suit against the protected person until liability has been so determined.'

7

R-2-32, at 7-8 (quoting the St. Paul insurance policy) (emphasis added).

The clause cited by the district court precludes suit against St. Paul for any damages not determined by jury trial or consensual settlement with St. Paul. "Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as such terms are not contrary to law." Cont'l Cas. Co., 466 S.E.2d at 6. Henning argues, however, that two reasons should prevent St. Paul from denying its liability here.

First, Henning argues that St. Paul cannot challenge the settlement with Mt. Vernon because it refused to defend Mt. Vernon and participate in settlement negotiations. Georgia courts have held that "an insurer loses its opportunity to contest the negligence of the insured or the injured person's right to recovery by refusing to defend." Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co., 442 S.E.2d 778, 783 (Ga.Ct.App. 1994). The duty to defend a suit, however, is an independent obligation from the duty to pay claims against the insurance policy. Colonial Oil Indus. v. Underwriters, 491 S.E.2d 337, 339 (Ga. 1997). Breach of the duty to defend "should not enlarge . . . coverage beyond the parties' contract." Id. In other words, an insurer is not estopped from asserting the defense of lack of coverage or other policy defenses even if it wrongfully fails to defend. Id. See also Aetna Cas. & Sur. Co., 442 S.E.2d at 783 ("[B]y refusing to defend, the

8

insurer does not lose its right to contest the insured's entitlement to a recovery under its policy.").

The clause relied on by the district court to exclude coverage of the claim was not a proper basis for a grant of summary judgment because St. Paul refused to defend Mt. Vernon or participate in settlement. St. Paul is therefore barred from contesting the settlement amount. It is not clear from the record, however, that the St. Paul policy covered the claim for negligent failure to obtain insurance asserted by Henning. Accordingly, we vacate the grant of summary judgment against St. Paul and remand for a determination of whether Henning's claim was covered by the policy.

Henning also argues that, even if the policy does not cover her claim for negligent failure to obtain insurance, St. Paul waived its right to contest coverage by defending Mt. Vernon without a reservation of rights in the original suit in state court in which this claim was raised. Under Georgia law, a defense of non-coverage may be waived "where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage." Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio, 319 S.E.2d 445, 446 (Ga. 1984). The district court indicated in its opinion that St. Paul did defend Mt. Vernon in the initial suit without a reservation of

rights. The negligent failure to obtain insurance claim was added late in the case, however, and the suit was apparently abandoned by Hemming after summary judgment on all other claims was granted to Mt. Vernon. Waiver is an equitable doctrine, however, and, because we lack sufficient evidence in the record to determine what specific actions St. Paul may have taken in defense of the original claim, we remand for the district court to determine whether St. Paul waived any defense of noncoverage that may otherwise be available to it under the policy.

### III. CONCLUSION

Accordingly, for the reasons stated above, we AFFIRM the grant of summary judgment to Continental. We VACATE the grant of summary judgment to St. Paul and REMAND for a determination of whether the St. Paul policy covered a claim for negligent failure to obtain proper insurance, and if not, if St. Paul waived any defense of noncoverage due to its prior defense of Mt. Vernon without a reservation of rights.