[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13875
_____

D.C. Docket No. 1:11-cv-20489-JLK


JAMES A. BACON

Plaintiff-Appellee,

versus

STIEFEL LABORATORIES, INC., et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 31, 2014)

Before MARTIN, JULIE CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

In this case, we have had the benefit of oral argument, and have carefully considered the briefs and the relevant parts of the record.  We conclude that the district court erred when it held that the Plan Administrator "had no reasonable basis for determining that Plaintiff put his shares to the Company," (Docket 155 at 8), and thus the district court erred when it held that the Plan Administrator's decision was arbitrary and capricious.  Quite the contrary, we conclude that there was ample basis in the administrative record to support the Plan Administrator's decision.

In July 2009, Bacon filed a putative class action against Stiefel Laboratories, Inc. ("SLI" or "Company") and individual defendants alleging violations of securities laws and breach of fiduciary duties.  Bacon withdrew from the class action upon belief that he had exercised neither the pre-2009 "put" option nor the post-2009 Automatic-Put Form ("Auto-Put Form").  He then filed an individual action against the same defendants and subsequently the parties stipulated to submit a single issue to the ESBP administrator ("Plan Administrator") to exhaust all administrative remedies pursuant to ERISA.  The Plan Administrator considered the single issue of "whether . . . Bacon exercised his right, in or about January 2009, to put his 25.386449 shares of SLI common stock that he received as a distribution from the [ESBP] to SLI."

2

The evidence in the administrative record is as follows.  Plaintiff was a participant in the Company's employee stock bonus plan (the "Plan"), was eligible at the relevant time in January, 2009, to receive a distribution of the Company's stock in his Plan account, and was eligible to exercise his "put" right to sell that stock to the Company.  As the district court acknowledged:

> On January 20, 2009, Plaintiff submitted the old distribution election form … electing to have a distribution of his shares sent to his retirement account at Fidelity Investments ….  Plaintiff included with the form a handwritten note indicating that he wanted to exercise his put right.  Plaintiff also sent an email to SLI employee Suni Buria the following day that asked her to confirm receipt of the paperwork he mailed for his "election."   Then on February 13, 2009, SLI purchased his shares at $16,469 per share.   SLI  sent $83,617.88 in cash to plaintiff and a promissory note for $334,471.53 to his Fidelity retirement account.

Docket 155 at 4 (footnotes omitted).  Prior to January 1, 2009, the committee charged with administering the Plan had established a procedure by which Plan participants could exercise their "put" rights.   The procedure involved submission of a standardized Distribution Form which requested that the Plan distribute shares to the participant.   The participant would then endorse and notarize the stock certificates, or otherwise indicate by an accompanying writing his intention to "put" the shares, and send them back to the Company.  As of January 1, 2009, however, the committee rolled out a new procedure, using an Auto-Put Form that eliminated the need for mailing back and forth the stock certificates.  The single form allowed a participant to simultaneously request both a distribution and a

3

"put" or sale of his shares.   Because the events relevant in this case occurred in January and February 2009, the Auto-Put procedures were applicable.

The first step in a review of a Plan Administrator's decision (by either the district court or this court) is to apply a de novo standard to determine whether the Plan Administrator's decision is "wrong."  If the Plan Administrator's decision is not wrong, then it is due to be affirmed.   Blankenship v. Metropolitan Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011).  We conclude that the Plan Administrator's decision in this case was not wrong, and therefore it was due to be affirmed.  Accordingly, the judgment of the district court must be reversed. Moreover, under the six-step analysis set forth in Blankenship, even if we concluded that the Plan Administrator's decision were de novo wrong, the Plan Administrator here was vested with discretion, which means that even if we had concluded that the Plan Administrator's decision were wrong, we nevertheless would be required to affirm that decision if there were reasonable grounds supporting it.[1]  Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1325 (11th Cir. 2001).  In other words, we would review the decision under the deferential arbitrary and capricious standard.

Although plaintiff in this case did not execute the actual form (the Auto-Put Form) which was being used at the time to accomplish a simultaneous distribution

---

[1]    There was no conflict of interest on the part of the Plan Administrator.

of Company stock to a participant and an exercise by the participant of his "put" right to sell the stock to the Company, the overwhelming evidence in the administrative record reflects that the substance of the actions contemplated by the Auto-Put Form did occur in this case. By executing and submitting the Distribution Form, plaintiff requested a distribution of the Company's stock in his account. And by submitting simultaneously his handwritten letter requesting that his stock be "put" for sale to the Company, plaintiff was in substance exercising his "put" right to sell the stock to the Company and authorizing the Plan Administrator to take the steps necessary to accomplish same. Following those instructions from Bacon, the Company actually implemented the sale of stock and made payment to him. Bacon accepted the payment and, for about two years, never notified the company of any perceived problem with the sale. Indeed, the overwhelming evidence indicates that both parties to the transaction treated the "put" as having been exercised and the sale of the stock as having been consummated.

We readily reject plaintiff's argument on appeal that the <u>only</u> way the "put" right could be exercised is by signing the Auto-Put Form. Plaintiff has pointed to no provision of the Plan itself or of any authorized rules with respect to the Plan that require that the exercise of a "put" right be accomplished <u>solely</u> by executing the Auto-Put Form. Nor is there any other evidence in the record indicating that

5

execution of the Auto-Put Form is the <u>only</u> way to exercise the "put" right.[2]  Even if there were any ambiguity in that regard, either in the Plan itself or in authorized rules with respect to the Plan, the Plan Administrator had full discretion to interpret the terms and provisions of the Plan, and her decision obviously interpreted the Plan not to require such strict compliance with formalities.  Cf. <u>Griffis v. Delta Family-Care Disability</u>, 723 F.2d 822, 823 (11th Cir. 1984).  In other words, the Plan Administrator's decision clearly rejects any interpretation of the Plan that would require, for the exercise of a "put" right, the execution of the Auto-Put Form.

In summary, the overwhelming evidence indicates that the plaintiff not only intended to exercise his "put" right, but also that he actually did so to the satisfaction of both parties to the transaction and in a manner entirely consistent with authorized rules and procedures governing the Plan.  Thus the Plan Administrator's interpretation of the rules governing the Plan falls comfortably within the Plan Administrator's discretion, and the Plan Administrator's findings of fact are amply supported in the administrative record.[3]

---

[2]  To the contrary, the record contains examples of the exercise of a "put" option by simple letter.

[3]  We reject without need for further discussion plaintiff's argument on appeal that we cannot consider plaintiff's testimony with respect to his handwritten note.  Plaintiff is factually wrong in his contention that the Plan Administrator based no reliance on this.  To the contrary, the Plan Administrator expressly relied upon the depositions of plaintiff stating and explaining that he had exercised his "put" right.  The plaintiff's testimony about his handwritten letter is the clearest indication in his testimony that he did exercise his "put" right, and his testimony in that

For the foregoing reasons, the judgment of the district court is reversed, and the decision of the Plan Administrator – that plaintiff did exercise his "put" right and did sell his shares of the Company stock – is sustained.  This case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

regard is the testimony to which the Plan Administrator was most plausibly referring.  We also reject as wholly without merit plaintiff's suggestion that his deposition testimony was ambiguous with respect to the content of his handwritten letter.  Plaintiff's testimony was clear that his handwritten letter included a request to "put" his stock for sale to the Company. Other arguments by plaintiff on appeal are rejected without need for discussion.