[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-13066

Non-Argument Calendar

_____

ALANA WALKER,

Plaintiff-Appellant,

*versus*

LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-00484-SCJ

_____

Before LAGOA, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Alana Walker appeals the district court's grant of judgment on the administrative record in favor of defendant Life Insurance Company of North America ("LINA") in her disability insurance lawsuit brought pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. On appeal, Walker argues that the district court erred because she had presented objective evidence of her disability and the district court discounted that evidence, that the opinions of the consulting doctors were insufficient to undermine the evidence she presented of her disability, that there are no jobs in the national economy that she could perform that would meet the salary requirements set in the policy, and that the award of Social Security benefits was persuasive evidence of disability.[1]

---

[1] In her reply brief, Walker argues for the first time that the district court erred when it decided the case under the standard for a judgment on the administrative record and not the summary judgment standard because she did not agree to the case being decided on the record pursuant to Federal Rule of Civil Procedure 52 and instead had filed for summary judgment. However, Walker did not raise this argument in her initial brief on appeal, nor did she make this argument in the district court. In her initial brief on appeal, she does not challenge the fact that the district court made findings of fact pursuant to Rule 52, the procedure favored when "the Parties seek a decision based on an agreed-upon administrative record." Dist. Ct. Order, Doc. 26 at 3. Because she did not raise this challenge to the district court's procedure in her initial brief, Walker has waived this argument. *Sapuppo v. Allstate Floridian Ins. Co.*, 739

## I. FACTS

---

F.3d 678, 681 (11th Cir. 2014).  Moreover, Walker did not raise this argument in the district court and did not preserve the issue for appeal.  In its motion for judgment on the administrative record, LINA asserted—and cited case law in support—that when a decision is based on an agreed-upon administrative record, the appropriate procedure is under Rule 52 such that the district court makes findings of fact and conclusions of law.  *See* Defendant's Motion for Judgment on the Administrative Record, Doc. 16 at 1 n.1.  In her brief in opposition to Defendant's Motion for Judgment on the Administrative Record, Doc. 22-1 at 11, Walker did not challenge the propriety of the Rule 52 procedure, but rather suggested that the parties are in agreement as to the standard of review.  Indeed, in support of this standard of review, Walker even cited *Acree v. Hartford Life & Accident Ins. Co.*, 917 F. Supp. 2d 1296, 1304-05 (M.D. Ga. 2013), at 1304 which holds "[w]hen a decision is based on an agreed-upon administrative record, judicial economy favors using findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 rather than summary judgment under Fed.R.Civ.P. 56."  The district court noted that both LINA and Walker were seeking a decision by the district court "based on an agreed-upon administrative record," and then explained his decision to use the Rule 52 procedure because in such circumstances "judicial economy favors using findings of fact and conclusions of law pursuant to [Rule] 52," quoting from *Acree*, the very case Walker had cited in support of the standard of review she endorsed.  Moreover, the filings of both parties in the district court sought a final, dispositive ruling by the district court in  favor of each respectively.  Similarly, in her initial brief on appeal, Walker seeks a final, dispositive ruling in her favor.  *See* Brief of Plaintiff-Appellant at 43 ("Walker respectfully requests that this Court reverse the District Court's grant of judgment to LINA and reinstate her LTD benefits or remand this case to the District Court with instructions to render judgment in her favor.").  We conclude that Walker has acquiesced in the procedure employed by the district court and waived any challenge thereto.

We recount the facts briefly.  Walker was employed by D.R. Horton as a "branch supervisor," with an annual salary of $286,844.29, from October 2013 to September 2018.  Walker sought disability benefits from LINA through D.R. Horton's plan due to pain in her knees, right shoulder, and lower back, and received temporary disability benefits beginning on November 30, 2018, and lasting two years.  During that period, LINA helped Walker obtain Social Security Disability Insurance benefits, made retroactive to October 1, 2018.

Under the policy, twenty-four months of disability benefits are available if the employee is "unable to perform the material duties of his or her Regular Occupation," and "unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation."  The Regular Occupation is defined in the policy as the "occupation the Employee routinely performs at the time the Disability begins;" LINA looks at "the duties of the occupation as it is normally performed in the general labor market in the national economy" and "not work tasks that are performed for a specific employer or at a specific location."  After the initial twenty-four months end, disability benefits are available for the employee if he or she is "unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience," and "unable to earn 60% or more of his or her Indexed Earnings."[2]

---

[2] "Indexed Earnings" are the employee's salary at the time of disability, with yearly increases.

Several months before her twenty-four months expired, LINA informed Walker that it would be re-evaluating her entitlement to benefits beyond the initial period.  On November 18, 2020, LINA informed Walker that it had completed the review and no longer considered her disabled under the Policy.  The letter recounted the medical records that the claims administrators and medical consultants had reviewed, as well as conversations with her medical providers.  It also discussed the Independent Medical Evaluation (IME) that LINA had ordered with Dr. Murray, a board-certified Orthopedic Surgeon, who, after examining Walker and her records, had concluded that Walker was able to work a sedentary job with restrictions on activities such as walking, crouching, and standing.  The restrictions were then used by LINA's vocational department, who performed a Transferable Skills Analysis that considered Walker's "work capacity, restriction and limitations, along with your education and employment history, to determine occupations that you would be able to perform based on your current work experience."  The vocational department identified "Manager, Financial Institution" as an occupation that Walker could perform, and thus, the letter concluded that she was not disabled under the Policy.

Walker administratively appealed that decision.  To demonstrate that she was disabled, Walker underwent a Functional Capacities Evaluation ("FCE") in March 2021. For the FCE, Physical Therapist Daniel Navarro conducted a three-hour session with Plaintiff, performing various maneuvers and tests. Navarro observed Plaintiff sitting "for prolonged periods of time while filling

out intake paperwork (for which time she was not aware that she was being observed by the examiner)" and she "was observed to move around in her seat as if searching for comfort and, after approximately 30 minutes of continuous sitting, she took a short standing break." The FCE categorized her as "Below Sedentary," commenting that she was capable of frequent sitting at a desk but that she "will often be required to take extended reclined sitting periods due to the painful exacerbations she will surely experience in her lower back and legs after sitting in an erect position (even for a short time)." She also submitted a letter from her primary care physician, Dr. Adil Ansari, who concurred in the findings of the FCE.

LINA submitted the FCE and Walker's other medical records to two outside doctors, Dr. Donald Getz and Dr. Roger Belcourt. Dr. Getz, a board-certified Orthopedic Surgeon, reported that although she did have restrictions, there was "no clinical support for total impairment." He also stated that there was no clinical support for the pain levels she reported, and that there were no restrictions on her sitting. Further, Dr. Getz reached out to Walker's primary care physician, Dr. Ansari, who told Dr. Getz that he had only seen Walker twice and that she "would have some functional limitations related to her knee [osteoarthritis] and would not be able to stand or walk for long periods of time." Dr. Belcourt, an Occupational Medicine specialist, also placed no restrictions on her sitting and limited restrictions on her standing, walking, lifting, and kneeling. Both physicians examined the FCE

extensively but stated that it did not comport with their review of the record.

Walker also submitted a report by vocational expert Larry Underwood, who critiqued the report of LINA's vocational department and determined that there were no jobs Walker could perform that would comply with the salary requirements imposed by the Policy. Among other things, Underwood questioned the department's identification of "Manager, Financial Institution" as an occupation that Walker would qualify for based on her past employment, education, and training. Underwood questioned the department's reliance on the D.H. Horton job description without speaking to Walker about what she actually did and he noted that the specialists' restrictions on what Walker could do differed among themselves.

On August 17, 2021, LINA denied Walker's appeal. It recounted and relied upon the two specialist's opinions that Walker was capable of sedentary work and that the reports of her pain levels were not borne out by the imaging. It also recounted Underwood's report and the response thereto by LINA's vocational department. LINA's appeal letter found its vocational department more persuasive with respect to Walker's ability to perform the material duties of the Manager, Financial Institution occupation. Walker sought an appeal review and that was denied on October 29, 2021. Thereafter, she filed for judicial review of LINA's decision in the district court. However, the district court granted LINA's

motion for judgment on the administrative record, finding that LINA's denial of benefits was not wrong. Walker now appeals.

## II. STANDARD OF REVIEW

"Under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B), a plan administrator's benefits decision is subject to plenary review in federal court unless the administrator is given discretion to determine eligibility or construe the terms of the plan." *Harris v. Lincoln Nat'l Life Ins. Co.*, 42 F.4th 1292, 1294 (11th Cir. 2022). Because the plan administrator here does not have such discretion, the issue before the district court was whether LINA's decision was *de novo* wrong. *Doyle v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1352, 1356 (11th Cir. 2008). In this case, Walker has waived any objection to the district court's having made findings of fact and conclusions of law pursuant to Rule 52, *see supra* note 1; thus, we review legal questions *de novo* and factual findings for clear error. Fed.R.Civ.P. 52(a). We may reverse a district court's finding as clearly erroneous when, "after viewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1339 (11th Cir. 2018) (per curiam) (quotation omitted). Under this standard, we cannot "reverse the finding of the trier of fact simply because" we are "convinced" we "would have decided the case differently." *Solomon v. Liberty Cnty. Comm'rs*, 221 F.3d 1218, 1226 (11th Cir. 2000) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). While reviewing for clear error, it is not for us "to decide factual issues *de novo*." *Id.* at 1227 (*quoting Anderson*, 470 U.S. at 573).

"Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Id.* at 1227 (*quoting Anderson*, 470 U.S. at 574).

## III. DISCUSSION

### A. *Disability Determination*

Walker argues that she presented objective evidence in the form of the FCE, x-rays, and MRI that demonstrated her disability. The MRI showed disc protrusions and moderate to severe spinal canal stenosis at different levels compressing the spinal cord as well as impingement of her nerve root at L4. It showed tendinitis or tearing in her shoulder as well as cartilage deterioration, degenerative joint disease, and downward-sloping acromial process causing impingement. The x-rays showed her arthritis in her knees was nearly "bone-on-bone." The FCE showed the restrictions and limitations that resulted from those ailments, measured in an objective setting. Walker argues that the district court erred when it discounted the FCE, especially when the district court in a previous case and other courts have stated that FCEs provide reliable and objective assessments.

Walker also argues that the opinions of the consulting physicians were not sufficient to outweigh the FCE findings. She argues that the doctors provided subjective estimates of her restrictions and limitations while the FCE provided a comprehensive and objective measure.

We cannot conclude that the district court clearly erred when it found that LINA's assessment of her disability was correct. The district court discounted the FCE for several reasons but most importantly, the court stated that the FCE was not reliable because the consulting physicians found the FCE findings inconsistent with the clinical findings and those conclusions were sufficiently explained. Those consulting physicians examined all of Walker's records, including her MRI and x-rays, as well as the FCE. Looking at the objective measures (i.e. the MRI and x-rays) of her back and knees, the consulting physicians found that the images did not support pathologies that would result in the degree of pain she reported. To the extent that the consulting physicians' criticism of the FCE was sparse, each doctor referenced their earlier, comprehensive examination of the records to report that the FCE did not comport with the objective measures of her ailments. Their evaluations were buttressed by the examination of Walker performed by Dr. Murray. Although Dr. Murray apparently did not examine Walker's MRI and performed his examination before the FCE, he did examine and observe her and did review her x-rays. None of the treating physicians who examined Walker provided the type of comprehensive review of Walker's records that these consulting physicians did. All three consulting physicians concluded that there were little to no restrictions on Walker's ability to sit as would be required at a full-time sedentary job. Although all three recognized that Walker's knees, lower back, and shoulder required that she would be subject to some restrictions, we cannot conclude that the district court was clearly erroneous in finding that those

restrictions would not preclude Walker from performing the Manger, Financial Instruction job identified by LINA as an occupation which Walker could perform that prevented her from demonstrating disability.

In sum, we cannot conclude that the district court clearly erred when it relied upon, and found more persuasive, these three physicians over the FCE and Walker's doctors.

### B. *Jobs in the National Economy*

Walker argues that even if this Court were to agree with LINA that Walker could perform sedentary work, there are no jobs in the national economy (that meet the Policy's 60% salary level) that she could perform. Specifically, she faults LINA's identification of "Manager, Financial Institution" as similar to her previous job because her job as a branch supervisor had different responsibilities, a different supervisor, and  different educational/experience requirements.

The district court did not clearly err when it concluded Walker had not shown there were no jobs in the national economy, with the requisite salary, that she could perform. As the LINA policy states, determination of what Walker's regular occupation had been was to be based on the "duties of the occupation as it is normally performed in the general labor market," not the work tasks that the employee actually "perform[s] for a specific employer or at a specific location." The district court compared the tasks that the LINA vocational department identified "Manager, Financial

Institution" with the job description of the position Walker held with D.H. Horton.  It listed the essential features of each job and noted the substantial overlap.  It noted that the D.H Horton job listed supervisory duties and management of the office, which comports with the D.O.T. description of "Manager, Financial Institution."  Because the descriptions of Manager, Financial Institution and the description of Walker's regular occupation were similar in important respects, we cannot conclude that the district court clearly erred when it found that Walker is qualified and that Walker could find employment that met the requirements set out in the policy.

Walker also argues that even if LINA were correct that she was qualified to be a Manager, Financial Institution, the physical restrictions set by LINA's consulting physicians disqualified her for the position.  Specifically, the description of the job states that it requires frequent reaching including overhead.  But, because she is right-hand dominant and would thus necessarily reach with that arm, the consulting physicians' restrictions that she never reach overhead would disqualify her.  But the district court's conclusion that she could reach overhead with her unrestricted, albeit non-dominant, left arm overcomes this qualm and was not clearly erroneous.[3]

---

[3] To the extent that Walker argues that because her condition did not improve between the time that LINA awarded her the 24-month disability payment and when it denied her permanent disability LINA cannot deny benefits, we reject that argument.  The policy at issue here, unlike the one in the case cited by Walker—*Levinson v. Reliance Standard Insurance Co.*, 245 F.3d 1321 (11th Cir.

*C. Social Security Benefits*

Walker argues that the district court erred when it found the award of Social Security benefits unpersuasive. She argues this was error because even though the full record of Walker's disability case was not available, it was clear that the Social Security Administration found Walker totally disabled at age 52 and because her past work was skilled and transferable, she did not benefit from relaxed standards used for those 55 and over.

The district court did not err when it did not defer to the finding of entitlement to Social Security benefits. We have stated that "the approval of disability benefits by the Social Security Administration is not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan." *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1314 (11th Cir. 1999). Further, as the district court noted, the additional information in the form of the consulting physicians' examination and review of the medical records was not available to the Social Security Administration. These reasons for discounting the

---

2001)—has two phases, with an initial temporary— twenty-four-month— grant of benefits upon proof of certain facts, and then a later phase—the long-term disability benefits—upon proof of different facts. Because the analysis in the later phase is subject to different criteria and is based upon a much expanded record, LINA is not bound by the initial determination. *Accord Doyle v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1352, 1361–62 (11th Cir. 2008)

persuasiveness of the Social Security decision are cogent and we cannot say that the court erred when it so found.

Because Walker has not shown that the district court erred when it upheld LINA's decision denying permanent disability benefits to her, we affirm the decision of the district court.

AFFIRMED.