Ronald **HAGBERG**, Plaintiff,

v.

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,** Defendant.

No. 4:02 CV 318–SPM.

United States District Court, N.D. Florida, Tallahassee Division.

March 23, 2004.

---

Lee Warren Marcus, Ernest Jay Myers, Marcus, McMahon & Myers, PL, Orlando, FL for defendant.

John V. Tucker, Anderson & Tucker, St. Petersburg, FL, for plaintiff.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

MICKLE, District Judge.

Pending before the Court are the parties' cross motions for summary judgment (docs. 34 and 38). At issue is the propriety of Liberty's decision to terminate Plaintiff's long term disability benefits upon a finding that Plaintiff was no longer disabled for any occupation.

## I. BACKGROUND

Plaintiff is insured by Liberty for long term disability through an employee welfare benefit plan governed by ERISA[1]. Under terms of plan, Liberty has discretionary authority to determine eligibility for benefits.[2]

In November 1996, Plaintiff became unable to work and began receiving disability benefits from Liberty. Liberty continued paying benefits until February 2002, at which time Liberty found that Plaintiff was no longer disabled for any occupation, and that he therefore did not qualify for benefits under the terms of the policy.[3] Plaintiff contends that he has demonstrated that he is disabled for any occupation and is entitled to receive benefits.

## II. HEIGHTENED ARBITRARY AND CAPRICIOUS STANDARD

Because Liberty is operating under a conflict of interest, a heightened arbitrary and capricious standard applies.

*Levinson v. Reliance Standard Life Ins.*, 245 F.3d 1321, 1326 (11th Cir.2001) (when ERISA plan administrator profits from a denial of benefits, a conflict of interest exists and heightened arbitrary and capricious standard applies). Under the standard, the Court first makes its own determination based on a review of the record whether Liberty's decision was wrong. *HCA Health Services of Ga. Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir.2001). If the Court finds Liberty's decision was not wrong, then no further inquiry is needed. Favorable judgment should be entered for Liberty.

If, on the other hand, the Court finds Liberty's decision was wrong, Liberty may still prevail but only if two conditions are met. First, there must be a reasonable basis in the record for Liberty's decision, even though the Court did not agree with the decision. *Levinson*, 245 F.3d at 1326–27. Second, Liberty must prove that its decision was not tainted by self-interest. *HCA Health Services of Ga.*, 240 F.3d at 994. If either of these conditions are not met, then favorable judgment should be entered for Plaintiff.

## III. ANALYSIS

The record evidence concerning Plaintiff's physical disabilities falls into five general categories: (1) medical records prior to the December 5, 2001 IME[4] by Dr. Miller, (2) surveillance videos from July and August 2001, (3) Dr. Miller's IME, (4) Plaintiff's doctors' responses to Dr. Miller's IME[5], and (5) the paper re-

---

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

2. See Doc. 36, Administrative Record at Bates Stamp number 1031 (AR 1031), Group Disability Income Policy, Section 7.

3. Under Liberty's policy, Plaintiff is eligible for benefits if he is "unable to perform, with reasonable continuity, all of the substantial duties of [his] own or any other occupation." AR 1009, Group Disability Income Policy, Section 2.

4. Independent Medical Examination

5. These include a Functional Capacity Evaluation (AR 119–161), a letter from Dr. Torres (AR 162), and a letter from Dr. Wunderlich (AR 164–65).

view by Dr. Al–Shathir. Each of these categories will be addressed in turn.

The medical records prior to Dr. Miller's IME generally support a finding that Plaintiff is disabled for any occupation. Although Liberty notes some concerns it had regarding doctor shopping and Dr. Caldwell's suggestion that Plaintiff was exaggerating the degree of his disability, the records are sufficient to establish that Plaintiff was disabled. Indeed, Liberty's own assessment of the records, as evidenced by its decision to pay benefits, supports this conclusion. Additional support is provided by the Social Security determination that Plaintiff is disabled. No substantial changes in Plaintiff's condition have occurred.

As for the surveillance videos, in some ways they support a finding of disability and in some ways they do not. For example, at all times Plaintiff appears normal in the footage. His facial expression is pleasant. He does not grimace, frown, or show any other signs of distress that might be expected from a person with his degree of disability. The activities shown, however, are very limited. There is no footage of Plaintiff exerting himself or performing ordinary household chores, such as carrying grocery bags, doing yard work, or washing a car. Nor does the footage show Plaintiff engaging in ordinary recreational activity.

The most strenuous activity captured on video is Plaintiff with his son on a golf course for a period of approximately two hours. Plaintiff's activity is limited to conversing with others, driving the golf cart, and getting in and out of the golf cart to walk around. He is shown several times adjusting two black cushions to support his seating position while in the golf cart. He is also wearing what appears to be a fanny pack but has been identified as a tens unit. He is wearing the tens unit during other

footage as well. As a whole the surveillance videos are neutral.

As for Dr. Miller's IME, it generally supports Liberty's finding that Plaintiff is not disabled. The examination is problematic, however, because Dr. Miller only saw Plaintiff on one occasion. Furthermore, although Dr. Miller agreed with the diagnosis of Chronic Fatigue Syndrome and Fibromyalgia, he provided no reasoned explanation why, contrary to the other medical opinions, he believed Plaintiff was able to work a sedentary job 40 hours a week. Dr. Miller made no express finding that Plaintiff was malingering. It appears that he determined so, contrary to the opinions of other doctors who have been treating Plaintiff on an on-going basis, from his impression of Plaintiff after a single examination.

Turning to Plaintiff's doctor's responses to the Miller IME, they are again consistent with a finding of disability. Although Liberty notes that the responses are conclusory and simply parrot Plaintiff's subjective complaints, the opinions are the product of established doctor-patient relationships. Furthermore, although Liberty questions the credibility of Plaintiff, Liberty has not made an issue of his doctors' credibility. Moreover, the extended interaction between Plaintiff and the therapist during the Functional Capacity Evaluation, as well as monitoring of his heart rate, reduce the likelihood that Plaintiff could fake his results.

Finally, Dr. Al–Shathir's paper review supports Liberty's finding that Plaintiff is not disabled for any occupation. Dr. Al–Shathir relies heavily on the surveillance videos to conclude that Plaintiff has greater abilities than the Functional Capacity Evaluation results indicate. But he does not acknowledge Plaintiff's use of the cushions or the tens unit. Nor does he explain how Plaintiff's treating doctors, who have

had the most contact with Plaintiff, could come to a contrary conclusion.

 Based on all of the record evidence, the Court finds that Plaintiff has shown he is disabled for any occupation.[6] This determination is based for the most part on the Court's own assessment of the video surveillance as well as the greater weight given to the opinions of Plaintiff's treating doctors.

 Turning now to the issue of whether there exists a reasonable basis in the record for Liberty's determination, the Court finds that there is. A reasonable basis has been described as "more than a scintilla but less than a preponderance" and something that "a reasonable mind might accept as adequate to support the conclusion reached." *See e.g. Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir.1995) (quoting from other cases). In this case, a reasonable basis for Liberty's decision exists given Dr. Miller's opinion on the IME, Dr. Al–Shathir's paper review[7], and Liberty's own assessment of the surveillance videos.

 Liberty, however, has failed to show that its decision was not tainted by self-interest, which is a requirement under the heightened arbitrary and capricious standard. It appears, to the contrary, that Liberty was eager to find reasons for denying Plaintiff's benefits without regard to his actual capacity to engage in full-time employment. Under the circumstances, the Court finds that the appropriate remedy is retroactive reinstatement of Plaintiff's long term disability benefits, as opposed to remanding the matter back to Liberty. *See Levinson,* 245 F.3d at 1330; *Cook v. Liberty Life Assurance Company of Boston,* 320 F.3d 11, 24 (1st Cir.2003). Accordingly, it is

ORDERED AND ADJUDGED:

1. Plaintiff's motion for summary judgment (doc. 38) is granted. Liberty shall retroactively reinstate Plaintiff's disability benefits and pay all sums due to the date of the filing of this lawsuit, together with interest at the legal rate from the date each monthly payment became due until the date it is paid.

2. Liberty's motion to strike (doc. 42) is granted. Dr. Linetsky's letter dated August 1, 2002 has not been considered by the Court.

3. Liberty's motion for summary judgment (doc. 34) is denied.

4. On or before April 16, 2004, the parties shall provided the Court with a proposed judgment with appropriate sums calculated for entry on April 19, 2004.

5. The Court reserves jurisdiction to award attorney's fees and costs. On or before April 16, 2004, Plaintiff shall file a motion to establish Plaintiff's entitlement to attorney's fees and costs, after conferring with Liberty in accordance with local rule 7.1(B). In the event Liberty opposes Plaintiff's entitlement, Liberty shall file a response in accordance with local rule

---

**6.** The evidence considered did not include Dr. Linetsky's letter dated August 1, 2002 since the letter was submitted after Liberty made its final decision in this case on July 16, 2002. A court's review when the plan administrator has discretion to determine eligibility is limited to "the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross and Blue Shield of Ala.,* 890 F.2d 1137, 1139 (11th Cir.1989). Liberty gave Plaintiff a reasonable opportunity to submit evidence concerning his disability before making a final decision and Plaintiff provides no compelling reason to deviate from this rule. Accordingly, Liberty's motion to strike (doc. 42) will be granted.

**7.** Liberty is free to credit Dr. Miller and Dr. Al–Shathir's opinions over the opinions of Plaintiff's treating doctors without providing an explanation for doing so. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

7.1(C). If the Court finds that Plaintiff is entitled to attorney's fees and costs, the Court will give the parties an opportunity to reach an agreement on the amount and will establish a briefing schedule that will control if the parties cannot reach agreement.