John SMITH, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendants.

Civil Action No. 06–1146.

United States District Court, E.D. Pennsylvania.

Oct. 3, 2007.

Robert J. Donaghy, Robert J. Donaghy, Esquire, Newtown, PA, for Plaintiff.

Jonathan Dryer, Wilson Elser Moskowitz Edelman & Dicker LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

John Smith brings this ERISA action seeking the payment of short– and long-term disability benefits by Prudential. Before the Court are cross-motions for summary judgment. Each motion will be granted in part and denied in part. Accordingly, and for the reasons that follow, the Court will remand to the Plan Administrator for a determination of the short-term disability benefits due to Mr. Smith and will deny Smith's claim for long-term disability benefits.

## I. BACKGROUND [1]

John Smith is a 60–year–old attorney who was employed by Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd. ("Harvey, Pennington") when he stopped working on April 8, 2004. PRU–000003. As an employee of Harvey, Pennington, Smith was covered by disability insurance under Prudential Group Contract PVIB–03 (the "Policy"). Ex. A, Pl.'s Mot. Summ. J., Nov. 14, 2006. Smith applied for short-term disability benefits from Prudential and submitted an Attending Physician Statement ("APS") from Dr. A. David Syd-

ney. PRU–000005 to 7. Dr. Sydney, a psychiatrist, stated that Smith suffered from major depression and chronic pain; he opined that Smith might be able to return to work by June 2, 2004, PRU–000006, although he later extended this date to June 14, 2004. PRU–000016. Prudential granted Smith's application for benefits on May 21, 2004 and he received benefits for the period from April 9, 2004 to June 13, 2004. PRU–000010 to 11; PRU–000017 to 18.

Smith returned to work on June 14, 2004 but ceased working again on June 16, 2004. PRU–000020. Smith again applied for short-term disability benefits and supported his application with a statement from Dr. Sydney. PRU–000019 to 21. Prudential granted this application and Smith received benefits for the period from June 16, 2004 to July 6, 2004. PRU–000116.[2]

Finally, at the end of August, Smith once again ceased working and made a third application for benefits. PRU–000022 to 24. His submission from Dr. Sydney suggested that Smith might be able to return to work in about a month, following adjustments to his medication. PRU–000023. However, a follow-up submission stated that the adjustments had been unsuccessful to that point and that therapy and medication were necessary for the foreseeable future. PRU–000027 to 29. Prudential denied the third application, finding that Smith was capable of returning to work as of July 3, 2004. PRU–000035 to 37.

On December 21, 2004, Smith embarked upon a lengthy appeal process of this deni-

---

1. Unless otherwise noted, all citations are to the excerpts of the administrative record submitted by the parties with their motions for summary judgment. The Court uses the PRU–000000 numbering system used by the parties.

2. Prudential cites to an in-house assessment stating it is "appropriate" to authorize benefits for this period. The letter communicating this fact to Smith was not included in the record before the Court. However, the fact is undisputed.

al of his third application, challenging Prudential's decision to terminate his short-term benefits as of July 3, 2004. PRU–000038. At this time, Prudential began to treat his appeal as a claim for both short— and long-term benefits. PRU–000042. During the appeal, Smith continued to receive treatment from Dr. Sydney and also made at least one inquiry at Harvey, Pennington regarding part-time employment.[3] On February 25, 2005, Prudential upheld its decision to deny benefits, PRU–000057 to 59, and, at some point in August 2005, Smith submitted a second appeal, now represented by Robert Donaghy, Esq. The facts related to the second appeal are set forth below.

- 8/1/05: Donaghy, Smith's attorney, sends a letter to Prudential, linking Smith's current depression to earlier medical problems, such as an aneurysm and a hernia operation, that date back to 1994. PRU–000069 to 75.
- 8/19/05: Prudential requests Smith to confirm whether Donaghy's letter was intended as a request for a second appeal. PRU–000078.
- 8/31/05: Donaghy confirms that the letter should be treated as a second appeal. PRU–000080.
- 9/19/05: Donaghy writes again, attaching a letter from Dr. Sydney supporting Smith's application. He states that, because he had heard nothing from Prudential, he will assume it is unnecessary to submit Smith's voluminous past medical records to support his own and Sydney's representations regarding Smith's past. PRU–000083 to 85.
- 10/4/05: Prudential notifies Smith that it is in receipt of his appeal and has commenced review. PRU–000086.
- 11/18/05: Prudential advises Smith that additional time will be needed for the review because an outside medical reviewer is being used. PRU–000089.
- 12/14/05: Prudential fax advises Smith that medical records about his past ailments are needed to evaluate his claim. The letter states that Smith will have 60 days to complete his submissions and that, as per the Policy, all deadlines in the Policy will be tolled until his submissions are complete.[4] PRU–000095 to 96.

The Policy states that appeals from a prior administrative decision must be submitted within 180 days of the prior decision. Ex. A, Pl.'s Mot. Summ. J., Nov. 14, 2006, at 45. Once an appeal is complete, Prudential has 45 days to render a decision; that deadline may be extended by 90 days if Prudential deems necessary. *Id.* The Policy states that, if an extension is necessary, notification will be provided to the claimant within the initial 45–day time period. *Id.* If a decision is not rendered within the appropriate time period, the claim is deemed denied on appeal. *Id.*

The Policy further provides that if a claim is denied on a second appeal, the claimant may elect to file a third appeal. *Id.* at 46. The deadlines listed above for a second appeal also apply to a third appeal.

---

3. On June 28, 2005, Smith's attorney consulted James Cardell of Harvey, Pennington about the possibility of Smith eventually returning to work on a part-time basis. PRU–000065. Upon being informed that part-time work was not available, Smith severed his relationship with the firm to decrease the possibility that conflicts would prevent him from accepting part-time work in the future. PRU–000067. The record does not show that Smith made any further attempt to secure employment.

4. Donaghy asserts that he never received this fax, but that he did speak with a Prudential representative by phone. The representative told him that further documentation was needed and stated that she would send details in writing.

*Id.* However, the Policy expressly provides that, if a claimant elects not to file a third appeal but to proceed with a law suit, Prudential waives any defense based on failure to exhaust administrative remedies. *Id.*

## II. LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). When confronted with cross-motions for summary judgment, as in this case, the court considers each motion separately. *See Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 150 (3d Cir.1993) (noting that concessions made for purposes of one party's summary judgment motion do not carry over into the court's separate consideration of opposing party's motion); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed.2001). In this case, the court will separately consider plaintiff's and defendant's motions for summary judgment.

### B. *ERISA Standard of Review*

When an ERISA plan beneficiary sues to recover benefits due under the plan, the standard of review depends, in part, on whether the plan allows for the exercise of discretion by the plan administrator. Ordinarily, courts give deference to an administrator's exercise of discretion when discretion is provided by the plan. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir.2000) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). However, the Supreme Court has coun-

seled that courts must be wary when an administrator making discretionary decisions operates under a conflict of interest. *Firestone*, 489 U.S. at 113, 109 S.Ct. 948.

For the evaluation of an administrator's discretionary decisions, the Third Circuit has adopted a "sliding scale" standard of review, calibrating the level of deference afforded an administrator with the intensity of the conflict of interest present in the decision-making process. *Pinto*, 214 F.3d at 392. "To apply the approach, courts first consider the evidence that the administrator acted from an improper motive and heighten their level of scrutiny accordingly. Second, they review the merits of the decision and the evidence of impropriety together to determine whether the administrator properly exercised the discretion accorded it." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 161–62 (3d Cir.2007) (citations omitted).

Structural factors as well as procedural factors are considered in this analysis. Structural factors that raise the specter of a conflict include: 1) the relative sophistication of the parties; 2) the information accessible to the beneficiary; 3) the financial arrangement between the employer and the administrator; 4) the financial status of the administrator; and 5) the administrator's claim evaluation process, i.e., whether the administrator uses an independent body to evaluate claims. *Id.* at 163. In particular, concern is heightened when a plan is funded and administered by an outside insurer, instead of an employer, since employers have at least some self-interest in employee satisfaction with the plan. *Id.* at 163–64. Furthermore, concern is raised when the claimant is no longer an employee because the complaints of a former employee about an outside administrator are less likely to adversely affect the administrator's relationship with the employer. *Id.* These sorts of "structural conflicts of interest warrant more

searching review, but in the absence of evidence that bias infected the particular decision at issue, we defer to an administrator's reasonable and carefully considered conclusions." *Id.* at 164.

To determine whether "bias infected the particular decision," courts determine whether any procedural defects were present in the administrative review of the claim. Irregularities that heighten the standard of review include: 1) reversal of the administrator's decision without additional medical evidence, *id.* (citing *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir.2000)); 2) self-serving selectivity in the use and interpretation of physicians' reports, *id.* (citing *Pinto*, 214 F.3d at 393); 3) disregarding staff recommendations that benefits be awarded, *id.* (citing *Pinto*, 214 F.3d at 394); 4) requesting a medical examination when all of the evidence indicates disability, *id.* (citing *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 (3d Cir.2004)); and 5) failure to afford a meaningful review or appeal, in particular by failing to take action on a claim or appeal until after the deadline set by the plan, *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295–96 (3d Cir.2002).

When there is little evidence of a conflict of interest or procedural defects are few and minor, courts apply a deferential arbitrary and capricious standard of review. *Post v. Hartford Ins. Co.*, 501 F.3d at 165 (3d Cir.2007). When there is substantial evidence of a conflict or when procedural defects are numerous, significant or continuing, courts apply a more searching standard. *Id.* The touchstone of the inquiry is "whether the administrator appropriately exercised its discretion." *Id.* at 161–62.

## III. APPLICATION AND ANALYSIS

### A. *Standard of Review*

Applying the factors enumerated in *Post v. Hartford*, the Court concludes that there is a structural conflict of interest, as well as procedural irregularities suggesting that that conflict may have influenced Prudential's decision to deny Smith benefits. Therefore, the Court applies a standard of review that is toward the strict end of the *Pinto* sliding scale.

#### 1. *Structural factors*

■ A number of the structural factors cited by the Third Circuit in *Post* and *Pinto* as justifying a heightened standard of review are present in this case. First, Prudential is an outside insurer that appears to both fund and administer Smith's plan. Thus, Prudential does not have the self-interest that an employer would have in ensuring employee satisfaction with the handling of claims. Second, during the appeal process, Smith ceased his employment with Harvey, Pennington. Because he was a former employee, any complaints that Smith had about Prudential's actions would be less likely to be heard by Harvey, Pennington and less likely to adversely affect Prudential's relationship with the law firm. Third, Prudential's claim evaluation process is conducted largely in-house by Prudential employees, not by an independent body.

As the Third Circuit stated in *Post*, "the administrator is an outside insurer that makes claims decisions itself. This is the very sort of conflict ... [that is] substantial and worthy of raising the standard of review," particularly in light of the other structural factors in this case. *Post*, 501 F.3d at 165.

#### 2. *Procedural Factors*

■ There are also procedural irregularities suggesting that the conflict influenced Prudential's decision making. Several of these types of procedural irregularities were identified by the Third Circuit as raising the standard of review. *Id.* at 164–65; *Gritzer*, 275 F.3d at 295–96.

First, Prudential can be said to have arrived at two different conclusions regarding Smith's short-term disability based on substantially similar evidence—a prognosis from his attending physician. In granting Smith's first two applications for short-term benefits, Prudential relied solely on the report of Dr. Sydney, who opined that Smith was unable to work. However, Prudential denied Smith's third application for short-term benefits, despite the fact that the only available evidence was the report of Dr. Sydney, who continued to maintain that Smith was disabled. Second, in its interpretation of Sydney's reports, Prudential made selective and self-serving use of Dr. Sydney's statements. For example, Prudential focused on Sydney's statement that Smith might be able to return to work in a month or two while ignoring his statement that Smith could not presently work. Third, Prudential failed to afford Smith a meaningful appeal. Rather than exercising its discretion and making a timely evaluation of Smith's appeal, Prudential delayed until the deadline set by the Policy (and also by ERISA) for Prudential's response to the appeal had passed. At that point, having run out the clock, Smith's appeal was simply "deemed denied." Neither Smith, nor this Court, have the benefit of an explanation of Prudential's "decision" to deny the appeal.

Because there are structural factors that suggest a conflict of interest, plus procedural irregularities suggesting that the conflict influenced Prudential's decision making, the Court will apply a heightened standard of arbitrary and capricious review to the administrator's decision to deny short– and long-term benefits.

Heightened arbitrary and capricious review "requires a determination 'whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time the decision was made.' Any deference we might ordinarily afford this decision will be tempered due to [the administrator's] conflict of interest." *Smathers v. Multi–Tool, Inc./Multi–Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191, 199–200 (3d Cir.2002) (quoting *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir.2001)).

### B. *Plaintiff's Motion for Summary Judgment*

 Plaintiff moves for summary judgment, arguing that Prudential's denial of short-term benefits was arbitrary and capricious.

As to the short-term benefits, there is scarce evidence in support of Prudential's decision;[5] in particular, the evidence supporting Prudential's conclusion that Smith was capable of work as of July 3, 2004 is paltry. When Prudential denied Smith's third application for benefits, it had before it only the report of Dr. Sydney. Sydney opined that Smith was unable to work, although he held out hope that Smith might be able to return to work at a later date. In denying benefits, Prudential fixated on Sydney's statement that Smith might be able to return to work in the future without explaining why it chose to disregard Sydney's assertion that Smith was unable to work at that time. Prudential provided no explanation of why it relied on Sydney's opinion twice to grant benefits but refused to do so for Smith's third application. Moreover, Prudential's focus on Smith's future ability to return to

---

**5.** It seems that, under the *Pinto* approach, once the court identifies sufficient evidence of procedural irregularities to apply the heightened arbitrary and capricious standard, *ergo*, the same evidence will also lead to the conclusion that the Administrator's decision was arbitrary and capricious.

work is illogical in the context of short-term benefits. Obviously a claimant seeking short-term benefits believes he will eventually return to work; that is the very essence of a short-term disability.

■ As to long-term benefits, however, the Court concludes that Prudential's decision was neither arbitrary nor capricious. No evidence of long-term disability is found in the administrative record. To the contrary, all of Dr. Sydney's statements, which are the evidence that most strongly supports Smith's claim, state that Smith should be able to return to work in the relatively near future. No doctor opined that Smith was permanently disabled or would be unable to return to work in more than a few months.

### C. Defendant's Motion for Summary Judgment

Prudential moves for summary judgment on two grounds: (1) that Smith failed to exhaust his administrative remedies; and (2) that, even if Smith exhausted his administrative remedies, the decision of Prudential denying Smith's claim must be upheld because it was neither arbitrary nor capricious.

### 1. ERISA Exhaustion Requirements

■ Defendant's motion for summary judgment on the ground that Smith has failed to exhaust his administrative remedies will be denied because, in fact, Smith has exhausted his administrative remedies.

■ "[C]ourts require exhaustion of administrative remedies prior to hearing an action for a denial of ERISA benefits." *Harrow v. Prudential Ins. Co. of America,* 279 F.3d 244, 252 (3d Cir.2002). A plain-

tiff can satisfy the exhaustion requirement either by completing the appeal process under the benefit plan or by showing that the claim was "deemed denied" after the plan administrator failed to address the claim within the time frame provided by the plan. *See Gritzer v. CBS, Inc.,* 275 F.3d 291 (3d Cir.2002) (holding that a plaintiff has exhausted his administrative remedies when his claim is deemed denied because of failure of administrator to respond in a timely manner).

The Policy provides that the insurer must provide the claimant with a determination of a disability claim on appeal within 45 days of when the appeal is submitted. This deadline tracks Section 2560 of Title 29 of the Code of Federal Regulations, which provides that the 45–day review period begins to run when a claim is filed, regardless of whether all necessary information has yet been submitted. 29 C.F.R. § 2560.503–1(i)(4). In the event that an extension of the review period (beyond the initial 45 days) is sought by the insurer in order to obtain necessary documents from the claimant, the review period is tolled from the date the notification of extension is sent to the claimant. *Id.*

Smith contacted Prudential regarding his second appeal on August 1, 2005. In this letter, he did not formally request an appeal; however, on August 31, 2005, he confirmed in writing through his attorney that his August 1 letter was intended as a request for an appeal. Thus, Prudential's review period began to run on August 31, 2005 at the latest; it expired on October 15, 2005, well before Prudential contacted Smith to seek an extension or to request further documentation.[6] Although Pru-

---

6. Smith noted in his August 31 letter than he intended to submit additional materials; however, his appeal runs from when it is filed, "without regard to whether all the information necessary to make a benefit determination on review accompanies the filing." 29 C.F.R. § 2560.503–1(i)(4). Moreover, even calculating the review period from September 21, the date of Smith's final submission, Prudential should have responded to his appeal by November 5, not November 18.

dential did notify Smith on November 18, 2005 that it was taking a 90-day extension, by this time it was too late—the response period had expired and Smith's appeal had been deemed denied. *See Schmir v. Prudential Ins. Co. of Am.*, No. 03–187, 2003 WL 22466168, at *3 (D.Me. Oct. 30, 2003) (holding that Prudential could not avoid the effectiveness of a "deemed denial" by issuing a belated response to claimant's appeal).

Because Smith exhausted his administrative remedies, Prudential's motion for summary judgment on the grounds of failure to exhaust will be denied.

#### 2. *Arbitrary and Capricious Review*

On the issue of short-term benefits, Prudential's motion for summary judgment will be denied because, as explained above, under a heightened standard of review, Prudential's denial of short-term benefits was arbitrary and capricious.

On the issue of long-term benefits, Prudential's motion for summary judgment will be granted. At the time he submitted his appeal to Prudential, Mr. Smith failed to present evidence that he suffered from a long-term disability;[7] therefore, Prudential's denial of long-term benefits was neither arbitrary nor capricious.

### III. REMEDY

The Court holds that Prudential's conclusion that Mr. Smith was capable of returning to work as of July 2, 2004 and its consequent denial of short-term disability benefits were arbitrary and capricious. According to Prudential's analysis and this Court's opinion, Mr. Smith's disability was ongoing as of July 2, 2004. Because Prudential arbitrarily denied Mr. Smith's benefits as of that date, the Plan Administra-

tor did not examine evidence regarding Mr. Smith's disability after July 2, 2004, nor is there sufficient evidence in the record for the Court to do so.

Because the administrative record is insufficient to determine the end date of Mr. Smith's short-term disability (assuming it did end), the Court will remand the case to the Plan Administrator for further evaluation consistent with this opinion. *See Smathers v. Multi–Tool, Inc./Multi–Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191, 200 (3d Cir.2002) (remanding case to plan administrator for first consideration of facts newly made relevant by the Court's opinion); *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 648 (2d Cir.2002) (holding that it is appropriate to remand to the plan administrator when the administrative record is incomplete).

### IV. CONCLUSION

For the reasons set forth above, Smith's motion for summary judgment will be granted as to short-term benefits and denied as to long-term benefits. Prudential's motion for summary judgment will be denied as to short-term benefits and granted as to long-term benefits. The matter will be remanded to the Plan Administrator for further proceedings consistent with this opinion. An appropriate Order follows.

#### *ORDER*

**AND NOW**, this **3rd** day of **October 2007**, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment (doc. no. 12) is **DENIED** insofar as it challenges Prudential's denial of long-term benefits. It is **GRANTED** as to short-term benefits. Defendant's Motion for Summary Judgment (doc. no. 14) is **DENIED** as to short-

---

**7.** Although Prudential argued vigorously that Smith was not entitled to long-term benefits, it is not clear that this claim was presented to Prudential for consideration. Therefore, the Court expresses no opinion on whether Mr. Smith might, in the future, be able to provide evidence that might indicate long-term disability.

term benefits, but **GRANTED** as to long-term benefits. The case is **REMANDED** to the Plan Administrator for a calculation of the benefits due to Plaintiff for short-term disability.

**AND IT IS SO ORDERED.**