Marla WERNICKI–STEVENS,
Plaintiff,

v.

RELIANCE STANDARD LIFE
INS. CO., Defendant.

Civil Action No. 08–1328.

United States District Court,
E.D. Pennsylvania.

July 15, 2009.

Scott I. Fegley, Scott I. Fegley, Esq. Law Offices, Yardley, PA, for Plaintiff.

Joshua Bachrach, Wilson Elser Moskowitz Edelman & Dicker LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Marla Wernicki–Stevens ("Plaintiff") brings this ERISA action seeking payment of long-term disability benefits, retroactive to May 3, 2007, by Defendant Reliance Standard Life Insurance Company ("Reliance").[1] Before the Court are cross-motions for summary judgment. For the reasons that follow, each motion for summary judgment will be granted in part and denied in part.

## I. BACKGROUND

Until January 25, 1999, Plaintiff was employed as a graphic designer at the Art Guild, Inc., in West Deptford, New Jersey. During her employment, Plaintiff enrolled in The RSL Group and Blanket Insurance Trust (the "Plan"), a group long-term disability policy, which is insured by Reliance under a policy bearing Group Policy No. LSC 067377.[2] Under the terms of the Plan, Reliance retained discretionary authority to determine a participant's eligibility for benefits.[3]

On January 26, 1999, Plaintiff was diagnosed with chronic fatigue syndrome secondary to Lyme disease, post herpatic neuropathy, and anxiety.[4] As a result, she took a medical leave of absence from the Art Guild, Inc. and applied for long-term disability benefits under the Plan. On April 26, 1999, Plaintiff's request for long term disability benefits was granted and Plain-

---

1. The Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), allows an individual to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

2. Unfortunately, the Court has only limited information regarding the Plan's provisions. Plaintiff submitted "Long Term Disability Plan Documents" as Exhibit A to her motion for summary judgment, but these consist of only two excerpted pages from what is presumably a much longer document. (See Pl.'s Mot. for Summ. J. Ex. A; doc. no. 10.)

3. Plaintiff repeatedly describes Reliance as the "Plan Administrator" and asserts that Re-

liance performed "ministerial functions including determination of eligibility for benefits." (See Compl. ¶ 7, doc. no. 1; Pl.'s Mot. for Summ. J. at 1; doc. no. 9.) Reliance maintains that it is not the "Plan Administrator" but rather a "claim administrator and a fiduciary under the Plan." (See Def.'s Mot. for Summ. J. at 2 n. 1, doc. no. 11.) For the purposes of the instant motions, this is a distinction without a difference. (See infra, Part II.B (discussing ERISA standard of review)).

4. Plaintiff also claims to be suffering from shingles, fibromyalgia, depression, and a neuropsychological impairment. (Compl. ¶ 26, doc. no. 1.)

tiff began receiving benefits under the Plan.[5] Plaintiff continued to receive these long-term disability benefits for approximately eight years, until May 3, 2007.

On May 3, 2007, however, citing the results of a Functional Capacity Examination ("FCE") that Plaintiff had undergone on March 20–21, 2007,[6] Reliance terminated Plaintiff's long-term disability benefits, finding that Plaintiff no longer met the Plan's definition of "Total Disability." (Pl.'s Mot. for Summ. J. Ex. M, doc. no. 10.) Specifically, Reliance found that Plaintiff was "capable of full-time sedentary restrictions and limitations with position change, and restrictions on upper extremity use." (*Id.*) Further, Reliance noted that Plaintiff's occupation, Graphic Designer, required only sedentary exertion. (*Id.; see also id.* Ex. U (vocational review concluding that Plaintiff would be able to perform the duties of a graphic designer, despite physical restrictions indicated by FCE).)

On August 8, 2007, Plaintiff appealed Reliance's decision. In support of her appeal, Plaintiff submitted additional medical records and a one-page letter from her treating physician, Dr. Emilia Eiras, dated October 10, 2007, in which Dr. Eiras stated that "[a]fter reviewing Marla's Functional Capacity Examination, it is clear to me that Marla is incapacitated to work in any capacity." (*Id.* Ex. Q.) Reliance referred Plaintiff's entire claim file to Dr. Howard Choi, a board certified physical medicine and rehabilitation specialist, for an independent review. Dr. Choi issued two reports, dated October 15 and December 10, 2007, in which he concluded that Plaintiff's total disability claim was not supported by "objective findings." (*Id.* Exs. N & O.) Specifically, Dr. Choi noted that "Dr. Eiras' letter of 10/10/07 does not include a rationale for why she concluded that the FCE showed that the claimant was incapacitated to work in any capacity" and that "[t]he records for each visit with Dr. Eiras ... reflect that this health care provider essentially catalogs the claimant's complaints and then proceeds to prescribe medications, without a neurological, musculoskeletal or functional examination." (*Id.* Ex. O.) Plaintiff's appeal was denied on January 8, 2008. (*Id.* Ex. T.) This lawsuit followed.

## II. LEGAL STANDARD

### A. *Motion for Summary Judgment under Fed.R.Civ.P. 56*

A court may grant summary judgment when "the pleadings, the discovery and the

---

**5.** Additionally, on December 8, 2001, Plaintiff was awarded Social Security Disability Benefits. (*See* Pl.'s Mot. for Summ. J. Ex. B, doc. no. 10.)

**6.** Plaintiff suggests that the FCE was ordered by Reliance "with an eye toward closing the claim." (Pl.'s Mot. for Summ. J. at 9, doc. no. 9.) Plaintiff's objection is likely based on the following language in an internal Reliance memorandum: "Prepare to close claim if FCE supports ability to RTW in sedentary occupation as claimant's own occupation was sedentary." (Pl.'s Mot. for Summ. J. Ex. J, doc. no. 10.) This contention, however, is not supported by the record. Rather, it appears that the FCE was requested only after an internal review of Plaintiff's file revealed that "Updated meds are currently greater than 30 months stale. Medical updates and review of significant subjective complaints warranted.... Last medical is from 2003." (*Id.*); *see also Post v. Hartford Ins. Co.,* 501 F.3d 154, 166 (3d Cir.2007) (noting that "periodic reviews are typical in the industry"). Moreover, Ingrid Bergstrom, R.N., Reliance's claim reviewer, noted that the FCE was necessary because "Dr. Eiras ... failed to really provide any kind of indication as to what the claimant's physical abilities were. They were basically what the claimant was complaining about, what her complaints were. There was no physical exam. She didn't indicate what her strength was, anything like that." (Pl.'s Mot. for Summ. J. Ex. G at 28:8–15, doc. no. 10.)

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(C). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* at 248–49, 106 S.Ct. 2505. "In considering the evidence, the court should draw all reasonable inferences against the moving party." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir.2007). However, while the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

These rules apply with equal force to cross-motions for summary judgment. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir.2008). When confronted with cross-motions for summary judgment, as in this case, the Court considers each motion separately. *See Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 150 (3d Cir.1993) (noting that concessions made for purposes of one party's summary judgment motion do not carry over into the court's separate consideration of opposing party's motion).

### B. *ERISA Standard of Review*

A denial of a claim for benefits brought pursuant to ERISA is governed by a *de novo* standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the plan administrator is granted such discretion, the Court must review the administrator's denial of a claim for benefits using an arbitrary and capricious standard of review. *See id.* at 111, 109 S.Ct. 948 (noting that where a plan administrator is given discretionary authority "[t]rust principles make a deferential standard of review appropriate").

"Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993) (quoting *Adamo v. Anchor Hocking Corp.*, 720 F.Supp. 491, 500 (W.D.Pa.1989)); *see also Ellis v. Hartford Life and Accident Ins. Co.*, 594 F.Supp.2d 564, 566 (E.D.Pa. 2009) (noting that a court applying an arbitrary and capricious standard of review is "not free to substitute its judgment for that of the administrator"); *Fabyanic v. Hartford Life and Accident Ins. Co.*, No. 02:08–cv–0400, 2009 WL 775404, at *5 (W.D.Pa. Mar. 18, 2009) (noting that the phrases "abuse of discretion" and "arbitrary and capricious" are interchangeable and that both are "understood to require a reviewing court to affirm the Administrator unless an underlying interpretation or benefit determination was unreasonable, irrational, or contrary to the language of the plan").

Until recently, courts in the Third Circuit adjusted the arbitrary and capricious standard of review "using a 'sliding scale' in which the level of deference … accorded to a plan administrator would change depending on the conflict or con-

flicts of interest affecting plan administration." *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009); *see also Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387, 392 (3d Cir.2000) (discussing "heightened" arbitrary and capricious standard of review). However, following the Supreme Court's decision in *Metropolitan Life Ins. Co. v. Glenn*, this type of enhanced arbitrary and capricious review is no longer appropriate. —— U.S. ——, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008) (finding that "a conflict should be weighed as a factor in determining whether there is an abuse of discretion" (internal quotations omitted)); *see also Schwing*, 562 F.3d at 525 ("Accordingly, we find that, in light of *Glenn*, our "sliding scale" approach is no longer valid. Instead, courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion"); *Ellis*,

594 F.Supp.2d at 566 ("*Glenn* makes clear that there is no heightened arbitrary and capricious standard of review"); *Farina v. Temple Univ. Health Sys. Long Term Disability Plan*, No. 08–2473, 2009 WL 1172705, at *9 (E.D.Pa. Apr. 28, 2009) (noting that post-*Glenn*, "there are only two possible standards of review that could apply ... arbitrary and capricious or *de novo* ").[7]

Thus, in reviewing Plaintiff's ERISA claim in the instant case, the Court will apply a deferential arbitrary and capricious standard of review. In so doing, the Court will " 'take account of several different considerations of which a conflict of interest is one,' and reach a result by weighing all of those considerations." *Schwing*, 562 F.3d at 526 (quoting *Glenn*, 128 S.Ct. at 2351); *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007) (noting that a court performing this inquiry must consider "both structural and procedural factors" and that "[t]he structural inquiry focuses on the financial incentives created by the way the plan is organized, whereas the procedural inquiry focuses on how the administrator treated the particular claimant").[8]

---

**7.** Although the Supreme Court had decided *Glenn* when the instant motions for summary judgment were filed, the Third Circuit had not yet decided *Schwing*, in which it explicitly repudiated the "sliding scale" approach. Thus, in her brief, Plaintiff argued that, despite *Glenn*, a "significantly heightened" form of arbitrary and capricious review was justified under the facts of this case. (Pl.'s Mot. for Summ. J. at 7–11, doc. no. 9; Pl.'s Reply at 2, doc. no. 12.) Reliance argued that, post-*Glenn*, a decision by a plan fiduciary vested with discretionary authority could only be reviewed under an arbitrary and capricious standard. (Def.'s Mot. for Summ. J. at 2, doc. no. 11.) As the Third Circuit clarified in *Schwing*, Reliance's argument on this point prevails.

Additionally, the Court notes that although the parties dispute Reliance's precise role in administering the plan at issue, neither party suggests that Reliance was not an administra-

tor or fiduciary such that Plaintiff would be entitled to a *de novo* standard of review. (See Pl.'s Mot. for Summ. J. at 7, doc. no. 9 (noting that "Reliance exercises sole discretionary authority for determining Plan members' eligibility for benefits"); *see also* Def.'s Mot. for Summ. J. at 2 n. 1, doc. no. 11 ("Plaintiff mistakenly states in her brief that Reliance Standard is the Plan Administrator. While Reliance Standard is the claim administrator and a fiduciary under the Plan, it is not the Plan Administrator, an entity under ERISA that has specific responsibilities.")) Reliance's proper title aside, the Court finds that an arbitrary and capricious standard of review is appropriate in this case.

**8.** Prior to the *Glenn* and *Schwing* decisions, courts in the Third Circuit analyzed structural and procedural factors separately, to determine whether a heightened arbitrary and capricious standard of review was appropriate.

## III. DISCUSSION

### A. *Plaintiff's Motion for Summary Judgment*

■ Plaintiff moves for summary judgment, arguing that Reliance's discontinuation of her long-term disability benefits was arbitrary and capricious. Plaintiff argues that Reliance's position as administrator of the Plan creates an inherent structural conflict of interest. Additionally, Plaintiff argues that (1) Reliance's reversal of its longstanding position that Plaintiff is totally disabled is not supported by sufficient facts; (2) Reliance improperly relied on "paper reviews" of Plaintiff's claim file; (3) Reliance's focus on objective data (i.e., the FCE) is per se arbitrary and capricious, given the nature of Plaintiff's disability; and (4) Reliance selectively relied on medical reports, crediting only the portions of the reports that supported its position and entirely ignoring Plaintiff's neuropsychological impairment. These arguments will be addressed *seriatim*.[9]

As an initial matter, the Court notes that, based on the administrative record before it, it has little information regarding Reliance's structural conflict of interest.

Indeed, although the parties have agreed that Reliance is at least a fiduciary under the Plan, and thus an arbitrary and capricious standard of review is appropriate, Reliance's exact role in administering the Plan is not clear. *See supra*, notes 3 & 7. Additionally, neither party has adequately explained Reliance's relationship to Plaintiff's former employer, the Art Guild, Inc., or explained how exactly the Plan is funded. (*See* Pl.'s Mot. for Summ. J. at 9, doc. no. 9 (arguing that "Reliance obviously funds and administers the plan apart from plaintiff's former employer"); *see also supra*, note 2 (noting that Plaintiff submitted only two pages of documents pertaining to the Plan).) Still, because the parties have agreed that Reliance is acting under a structural conflict of interest, the Court will consider this factor when deciding the instant motions.

■ Turning to the alleged "procedural anomalies" in this case, Plaintiff argues first that Reliance's decision to discontinue Plaintiff's long-term disability benefits is suspect because it was "solely" based on the results of the FCE, which contradicted other documents in the administrative rec-

---

*See Post*, 501 F.3d at 154. Now, however, while these factors remain relevant, such a rigid analytical framework is not required. *See Schwing*, 562 F.3d at 526 (noting that "benefits determinations arise in many different contexts and circumstances, and, therefore, the factors to be considered will be varied and case-specific").

9. Plaintiff also points out that Reliance's termination of her long-term disability benefits is at odds with Social Security's continuing award of disability benefits. Although the Court recognizes that such a disagreement "is a relevant-though not dispositive—factor" in its analysis, it finds that, under the facts presented here, the disagreement between Reliance and Social Security is neither suspect nor particularly relevant. *See Post*, 501 F.3d at 167; *see also Hoch v. Hartford Life and Accident Ins. Co.*, No. 08–4805, 2009 WL 1162823, at *17 (E.D.Pa. Apr. 29, 2009) (de-

clining to place "substantial weight" on the Social Security Administration's determination of Plaintiff's disability because "the SSA has very different guidelines for determining disability than does the Policy in this case").

As Reliance noted in a January 8, 2008 letter to Plaintiff's attorney, "the receipt of [Social Security] benefits does not guarantee that an individual will be awarded long-term disability benefits under [the Plan] (and vice versa). A person's entitlement to each of these benefits is based upon a different set of guidelines, and sometimes leads to differing conclusions. Oftentimes, each benefit provider is also considering different medical evidence in the evaluation of a claim." (Pl.'s Mot. for Summ. J. Ex. T, doc. no. 10.) Indeed, Plaintiff did not submit any evidence to suggest that Social Security re-examined her eligibility for benefits since its initial award to her in 2001.

ord. (Pl.'s Mot. for Summ. J. at 15–16, doc. no. 9; *id.* Ex. K, doc. no. 10.) In support of this argument Plaintiff points to the fact that in 2003 and 2004, years before the FCE was administered, Reliance concluded that Plaintiff was "totally disabled." (Pl.'s Mot. for Summ. J. at 15–16, doc. no. 9; *id.* Exs. F & H, doc. no. 10.) Similarly, Plaintiff relies upon medical reports in her claim file, many of which predate the FCE by more than three years. (*See, e.g., id.* Ex. C, doc. no. 10 (doctor's note from 2000).) While the Third Circuit has recognized that an insurer's bias may be evident where it "reverse[s] its own initial determination that [Plaintiff] was totally disabled without receiving *any* additional medical information," Plaintiff does not cite to any support for her argument that an FCE cannot constitute legitimate "additional medical information." *Pinto,* 214 F.3d at 393 (emphasis added). Moreover, the FCE's conclusion that Plaintiff was capable of full-time sedentary work, with restrictions, was confirmed by Dr. Choi's independent review. Plaintiff may disagree with these conclusions, but there is little to suggest that Reliance's decision to credit the FCE was "without reason."

Second, Plaintiff argues that Reliance improperly based its decision to discontinue Plaintiff's long term disability on a "paper review" of Plaintiff's file. Specifically, Plaintiff objects to the review by Ingrid Bergstrom and Dr. Choi, since neither spoke directly to Plaintiff or have expertise in neuropsychology. (Pl.'s Mot. for Summ. J. at 17–18, doc. no. 9.) In response, Defendant points out that Plaintiff's treating physician, Dr. Eiras, is a doctor of internal medicine and "is not a specialist in any capacity." (Def.'s Mot. for Summ. J. at 11, doc. no. 11.) Addition-

ally, Defendant notes that, based on the administrative record before the Court, it does not appear that Plaintiff was *ever* under the care of a specialist for either her physical or neuropsychological complaints, or ever even referred to a specialist by Dr. Eiras. (*Id.*) Further, Defendant argues that a physical examination of Plaintiff was unnecessary because of the FCE. (*Id.* at 7.)

■■ A "paper review" of a claim file is not, by itself, arbitrary and capricious. *See Dolfi v. Disability Reinsurance Mgmt. Servs. Co.,* 584 F.Supp.2d 709, 735 (M.D.Pa.2008) (finding that insurer's reliance on a paper review, rather than a physical examination, was not per se arbitrary and capricious). Moreover, the fact that Reliance credited the opinions of Nurse Bergstrom[10] and Dr. Choi over Plaintiff's treating physician, Dr. Eiras, is also not necessarily arbitrary and capricious. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation"). Here, there is no evidence that Reliance arbitrarily refused to credit Dr. Eiras' opinion, rather the evidence demonstrates that Reliance disagreed with Dr. Eiras' opinion and, instead, credited Dr. Choi's. Because "[a] professional disagreement does not amount to an arbitrary refusal to credit," Reliance's decision to credit Dr. Choi over Dr. Eiras was not arbitrary and capricious. *Stratton v. E.I.*

---

10. To the extent that Plaintiff's objection to Nurse Bergstrom's "paper review" of her file is based on the fact that Nurse Bergstrom is not a physician, this objection is unfounded.

*See Fabyanic,* 2009 WL 775404 at *9 ("There is no requirement that an administrator of an ERISA-governed benefits plan utilize a physician in reviewing claims.")

*DuPont De Nemours & Co.,* 363 F.3d 250, 258 (3d Cir.2004).

■ Third, Plaintiff argues that Reliance's focus on the results of her FCE is arbitrary and capricious because requiring "objective data for diseases like chronic fatigue syndrome and Lyme's disease which present variable symptoms is arbitrary and capricious as a matter of law." (Pl.'s Mot. for Summ. J. at 18, doc. no. 9.) In support of her argument, Plaintiff relies primarily on *Mitchell v. Eastman Kodak Co.,* in which the Third Circuit held that an insurer acted arbitrarily and capriciously in requiring objective medical evidence of Plaintiff's disability, where Plaintiff suffered from chronic fatigue syndrome. 113 F.3d 433, 442–43 (3d Cir.1997) ("Although in some contexts it may not be arbitrary and capricious to require clinical evidence of the etiology of allegedly disabling symptoms in order to verify that there is no malingering, we conclude that it was arbitrary and capricious to require such evidence in the context of this Plan and CFS."); *see also Brown v. Continental Casualty Co.,* 348 F.Supp.2d 358, 367–68 (E.D.Pa.2004) (finding FCE "unpersuasive" where Plaintiff suffered from fibromyalgia, a disease characterized by variable symptoms).[11]

In response, Reliance urges the Court to distinguish between "requiring objective proof that the claimant has a condition with objective proof that a particular condition is disabling." (Def.'s Mot. for Summ. J. at 7, doc. no. 11.) In other words, Reliance does not offer the FCE as proof that Plaintiff suffers from the litany of ailments described in her complaint, but rather as proof that, despite these symptoms, Plaintiff is capable of performing full-time sedentary work with restrictions. The Court finds this distinction persuasive. *See Lamanna v. Special Agents Mut. Benefits Ass'n,* 546 F.Supp.2d 261, 296 (W.D.Pa.2008) ("While the amount of fatigue or pain an individual experiences may be entirely subjective, the extent to which those conditions limit her functional capabilities can be objectively measured"); *see also Tesche v. Continental Casualty Co.,* 109 Fed.Appx. 495, 498 (3d Cir.2004) ("[W]e note that the record, while noting a diagnosis of fibromyalgia, is devoid of any medical opinion that she is disabled from any occupation due to fibromyalgia.")

The case of *Gibson v. Hartford Life and Accident Ins. Co.* is instructive. No. 06–3814, 2007 WL 1892486, at *13 (E.D.Pa. Jun. 29, 2007). There, the court rejected plaintiff's argument, based on *Mitchell,* that " 'the precedent within the Third Circuit holds that it is arbitrary and capricious to require objective medical evidence in the context of a claim for long-term disability benefits as a result of chronic fatigue syndrome or fibromyalgia.' " *Id.* at *12. The *Gibson* court noted that, unlike in *Mitchell,* there was no record evidence to suggest "that the decision to deny benefits was based on the absence of a known etiology for Plaintiff's symptoms." *Id.* Rather, the denial of benefits in *Gibson* was based on the insurer's assessment of plaintiff's "Physical Capacities Evaluation Form," and a vocational review.[12] Similar-

---

**11.** At least one other court has expressed the view that "an FCE is a highly questionable tool for determining whether a fibromyalgia patient is disabled." *See, e.g., Dorsey v. Provident Life and Accident Insurance Co.,* 167 F.Supp.2d 846, 856 (E.D.Pa.2001).

**12.** Specifically, in *Gibson,* the Physical Capacity Evaluation Form indicated that plaintiff could "sit for eight hours at a time, can stand for 30 minutes at a time for a total of two hours per day, and can walk for 30 minutes at a time for a total of two hours per day." 2007 WL 1892486 at *9. Additionally, the plaintiff was "capable of 'occasionally' driving, climbing, balancing, stooping, kneeling, crouching and crawling, and capable of 'frequently' reaching above her shoulder, reaching at 'desk level,' reaching below waist level

ly, based on the record before the Court, there is simply no evidence that Reliance's discontinuation of Plaintiff's long-term disability benefits was based on a lack of a known etiology for either chronic fatigue syndrome or fibromyalgia.

Here, the FCE demonstrated that, despite Plaintiff's multiple conditions, she was able to exert "maximal effort" during the course of a two-day exam and was capable of full time sedentary work, so long as certain restrictions were imposed. (Pl.'s Mot. for Summ. J. Ex. K, doc. no. 10 (noting that Plaintiff had "[s]ome limitation in overhead work due to prolonged use of upper extremities" and "[s]ignificant weaknesses in grip strength").) As a result of Plaintiff's performance, Reliance concluded that Plaintiff no longer met "the group policy's definition of Total Disability from [her] occupation." (Pl.'s Mot. for Summ. J. Ex. M, doc. no. 10.) This conclusion was later confirmed by Dr. Choi. Based on the record before the Court, Reliance's decision was not unreasonable.

▮▮▮ Fourth, Plaintiff argues that Reliance practiced "self-serving selectivity in the use and interpretation of physicians' reports," *Post*, 501 F.3d at 165, because it

ignored reports from 1994 and 1999, which allegedly demonstrate Plaintiff's neuropsychological impairment. (*See* Pl.'s Mot. for Summ. J. at 17, doc. no. 9; *id.* Exs. D & E, doc. no. 10.) In response, Reliance argues that (1) the 1994 and 1999 reports were not "objective" and (2) because there is absolutely no record evidence that Plaintiff ever received treatment for a neuropsychological impairment, Plaintiff has not met her burden of proof. (Def.'s Mot. for Summ. J. at 9, doc. no. 11.)[13]

In support of its first argument, Reliance offers Dr. Choi's December 7, 2007 report, in which he concluded that the 1999 neuropsychological examination "did not demonstrate the use of control measures." (Pl.'s Mot. for Summ. J. Ex. O, doc. no. 10.) Even if true, this statement, without more, does not explain adequately why Reliance reversed its earlier determination that, in addition to "frequent outbreaks of shingles," Plaintiff suffered from a from a "neuropsych impairm."[14] (*Id.* Ex. H (2004 Medical/Vocational Review by Nurse Bergstrom)); see also *Smith v. Prudential Ins. Co. of America,* 513 F.Supp.2d 448, 454 (E.D.Pa.2007) (finding that insurer's failure to explain why it "relied on [a doctor's]

and using her hands to grip and hold." *Id.* (citations omitted).

Like the plaintiff in *Gibson*, Plaintiff's FCE demonstrated that she is capable of "forward bending in standing, sitting and standing tolerance, walking, stairs, step ladder climbing and crawling, kneeling and half kneel" and had "average hand coordination bilaterally." (Pl.'s Mot. for Summ. J. Ex. K, doc. no. 10.) Additionally, the FCE examiner noted that "[t]he client's perception of abilities is less than those the client was actually able to do safely today." (*Id.*)

13. The Court notes that while the burden of proving disability ultimately lies with Plaintiff, "once a claimant makes a *prima facie* showing of disability through physicians' reports ... if the insurer wishes to call into question the scientific basis of those reports ... then the burden will lie with the insurer to support

the basis of its objection." *Lasser v. Reliance Standard Life Ins. Co.,* 344 F.3d 381, 391 (3d Cir.2003).

14. Importantly, based on the administrative record before the Court, it is not entirely clear to what extent Plaintiff's status as "totally disabled" depended upon her neuropsychological impairment. Although, as noted above, Reliance credited Plaintiff's neuropsychological impairment at times prior to its 2007 review, certain documents in the record fail to mention it at all. For example, the FCE lists Plaintiff's primary diagnosis as "Shingles / Post herpatic neuralgia" and her secondary diagnosis as "Depression, Anxiety, Chronic Fatigue, Fibromyalgia, Lyme." (Pl.'s Mot. for Summ. J. Ex. K, doc. no. 10; *see also id.* Ex. M (noting that Plaintiff ceased work "due to Chronic Fatigue Syndrome as a result of Post Herpatic Neuralgia").)

opinion twice to grant benefits but refused to do so for [plaintiff's] third application" was problematic).

Moreover, with respect to the burden of proof, it is clear that Plaintiff has made at least a *prima facie* showing of disability based on a neuropsychological impairment. In fact, the administrative record contains two neuropsychological evaluations, dated 1994 and 1999. (*See* Pl.'s Mot. for Summ. J. Exs. D & E, doc. no. 10.) In the 1994 evaluation, Kenneth Freundlich, Ph.D. concluded that, although Plaintiff's functioning is "generally intact," she "experiences attentional limitations, diminished memory and slight problem-solving difficulties. . . . [Plaintiff's] ability to sustain attention over extended periods of time is diminished. She is able to focus in spurts, but tasks that require ongoing sustained attention may produce fatigue. . . . The difference between her intelligence and memory is sufficiently large as to suggest diminished skills. Finally, her ability to retain newly learned information is below average." (*Id.* Ex. D.) Similarly, in 1999, Edward J. Murphy, Psy. D., concluded that "Ms. Wernicki at present is disabled from returning to her position as a graphic artist. Her inability to sustain focused attention, short term memory difficulties, and slowness in processing severely limit her ability to consistently perform at work." (*Id.* Ex. E.) These reports, even in the absence of any evidence indicating the Plaintiff has received treatment for a neuropsychological impairment, establish Plaintiff's *prima facie* case.

Reliance has essentially argued that Plaintiff's neuropsychological impairment is irrelevant because "there is no contemporaneous evidence of such an impairment." (Def.'s Mot. for Summ. J. at 10, doc. no. 12.)[15] Reliance does not cite any case law in support of this argument. Ad-

ditionally, unlike the physical limitations at issue in this case, the FCE does not provide an adequate ground for Reliance to reverse its previous determination that Plaintiff was suffering from a neuropsychological impairment. Nurse Bergstrom conceded during her deposition that the FCE did not "measure any type of neuropsychological impairment or disorder" but rather was designed to test a claimant's "strength" and "endurance." (Pl.'s Mot. for Summ. J. Ex. G 31:2–6.) Additionally, Nurse Bergstrom testified that Plaintiff's neuropsychological condition had not been a factor in her 2007 review of Plaintiff's claim. (*Id.* Ex. G 48:10–13 ("Q: Was there any consideration whatsoever of her neuropsychological condition in your 2007 evaluation? / A: No."); *id.* Ex. G 49:15–8 ("Q: And there was nothing in the medical records to discredit the testing that had been done in 1999? / A: No.").) Thus, even under the deferential "arbitrary and capricious" standard, to the extent that Plaintiff's award of long-term disability benefits was based on her neuropsychological impairment, the Court is unable to find that Reliance's decision to discontinue these benefits was supported by sufficient evidence.

For these reasons, Plaintiff's motion for summary judgment will be granted in part and denied in part. On the issue of Plaintiff's physical limitations, Plaintiff's motion for summary judgment will be denied because Reliance's decision to discontinue her long-term disability benefits, which was based on the results of the FCE, an independent review of Plaintiff's claim file by Dr. Choi, and a vocational review, was not arbitrary and capricious.

On the issue of Plaintiff's neuropsychological impairment, if any, Plaintiff's motion for summary judgment will be

---

**15.** Additionally, Reliance correctly points out that it had no duty to gather additional infor-
mation regarding Plaintiff's neuropsychological impairment. *Pinto*, 214 F.3d at 394 n. 8.

granted because Reliance's decision to discontinue her long-term disability benefits was arbitrary and capricious.

### B. *Reliance's Motion for Summary Judgment*

Reliance cross-moves for summary judgment, arguing that its discontinuation of Plaintiff's long-term disability benefits was not arbitrary and capricious. Reliance acknowledges that it was operating under a structural conflict of interest, but disputes each of the so-called "procedural anomalies" in its claim review process that Plaintiff challenges in her motion. In support of its motion, Reliance relies upon the administrative record submitted by Plaintiff. For the reasons stated above, Reliance's motion for summary judgment will be granted in part and denied in part.

On the issue of Plaintiff's physical limitations, Reliance's motion for summary judgment will be granted because its decision to discontinue Plaintiff's long-term disability benefits, which was based on the results of the FCE, an independent review of Plaintiff's claim file by Dr. Choi, and a vocational review, was not arbitrary and capricious.

On the issue of Plaintiff's neuropsychological impairment, if any, Reliance's motion for summary judgment will be denied because its decision to discontinue her long-term disability benefits was arbitrary and capricious.

### IV. REMEDY

This Court holds that Reliance's decision that Plaintiff was capable of returning to work in a full-time sedentary position, with restrictions, was arbitrary and capricious, but only to the extent that in making this determination, Reliance failed to consider Plaintiff's neuropsychological impairment, if any.

Because the administrative record is insufficient for the Court to determine to what extent, if any, Plaintiff's "total disability" status prior to May 3, 2007 was based on a neuropsychological impairment, the Court will remand the case to the claim administrator (Reliance) for further evaluation consistent with this opinion. See *Smathers v. Multi–Tool, Inc./Multi– Plastics, Inc. Employee Health and Welfare Plan*, 298 F.3d 191, 200 (3d Cir.2002) (remanding case to plan administrator for first consideration of facts newly made relevant by the Court's opinion); *Smith*, 513 F.Supp.2d at 456 (remanding to plan administrator where administrative record insufficient for Court to determine certain relevant facts).

### V. CONCLUSION

For all of these reasons, Plaintiff's motion for summary judgment will be granted in part and denied in part. Reliance's motion for summary judgment will be granted in part and denied in part. The matter will be remanded to the claim administrator (Reliance) for further proceedings consistent with this opinion. An appropriate order follows.

### *ORDER*

**AND NOW**, this **15th** day of **July, 2009**, upon consideration of Plaintiff's motion for summary judgment (doc. no. 9), it is hereby **ORDERED** that the motion shall be **GRANTED in part and DENIED in part.**

Plaintiff's motion is **GRANTED** to the extent that it challenges Reliance's discontinuation of her long-term disability benefits, which were based on her neuropsychological impairment, if any.

Plaintiff's motion is **DENIED** to the extent that it challenges Reliance's discontinuation of her long-term disability benefits, which were based on her physical limitations.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (doc. no. 11) is **GRANTED in part and DENIED in part.**

Defendant's motion is **GRANTED** to the extent that it seeks summary judgment on its decision to discontinue Plaintiff's long-term disability benefits, which were based on her physical limitations.

Defendant's motion is **DENIED** to the extent that it seeks summary judgment on its decision to discontinue Plaintiff's long-term disability benefits, which were based on her neuropsychological impairment, if any.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the claim administrator so that it may determine the extent to which Plaintiff's "total disability" status prior to May 3, 2007 was based on a neuropsychological impairment, if at all, and for a calculation of the benefits due to Plaintiff for such a neuropsychological impairment, if any.

**IT IS FURTHER ORDERED** that the case shall be marked **CLOSED.**

**AND IT IS SO ORDERED.**